*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0276P (6th Cir.)
File Name: 02a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NEW PAR, d/b/a Verizon
Wireless,
    *Plaintiff-Appellee,*

    *v.*

CITY OF SAGINAW,
    *Defendant-Appellant.*

No. 01-2083

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 00-10240—David M. Lawson, District Judge.

Argued: June 14, 2002

Decided and Filed: August 14, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
STAFFORD, District Judge.*

_____

*The Honorable William H. Stafford, Jr., United States District Judge
for the Northern District of Florida, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Thomas H. Fancher, CITY ATTORNEY'S OFFICE, Saginaw, Michigan, for Appellant. Zora E. Johnson, DYKEMA GOSSETT, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Thomas H. Fancher, CITY ATTORNEY'S OFFICE, Saginaw, Michigan, for Appellant. Zora E. Johnson, DYKEMA GOSSETT, Bloomfield Hills, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant, the City of Saginaw, Michigan, appeals from the district court's grant of summary judgment for Plaintiff-Appellee, New Par d/b/a Verizon Wireless ("New Par"). In March 2000, New Par, a provider of cellular telephone service, sought to obtain a building permit from Saginaw in order to erect a cellular tower. Because New Par's property did not meet Saginaw's minimum-size zoning requirements for "light industrial" use, New Par requested a variance from Saginaw's Zoning Board of Appeals. Following New Par's presentation of its request at two meetings, the Board denied the request. In June 2000, New Par filed a complaint against the City of Saginaw in the district court under the Telecommunications Act of 1996, alleging that the denial of its variance request violated both the Act and New Par's substantive due process rights and constituted a regulatory taking. The parties subsequently filed cross motions for summary judgment. In July 2001, the district court granted New Par's motion and denied Saginaw's motion, finding that the Board's denial of New Par's variance request violated the Telecommunications Act because the denial was not supported by substantial evidence in the written record. The court then issued an injunction ordering the City of Saginaw to grant New Par's variance request. For the reasons

explained below, we **AFFIRM** both the order of the district court granting New Par's motion for summary judgment and the district court's issuance of an injunction ordering Saginaw to grant New Par's variance request.

## I. BACKGROUND

New Par provides cellular telephone service in the greater Detroit area, including the City of Saginaw, in accordance with a license issued by the Federal Communications Commission ("FCC"). To improve its cellular coverage in the area, New Par obtained a property ("the property") in Saginaw with the intent of erecting a "150-foot-tall cellular telephone monopole." Appellee's Br. at 6. The property has a frontage of sixty feet, and it is approximately 3,400 square feet. Originally, the property was zoned for residential use, but it is currently zoned for light industrial ("M-1") use.[1] However, under the zoning code, M-1 properties must have a minimum frontage of 100 feet and a minimum square footage of 20,000 feet. In March 2000, New Par submitted an application for a building permit for the cellular tower with the City of Saginaw. Because the property did not meet the minimum size requirements, Saginaw denied the application. On April 20, 2000, therefore, New Par sought a variance from the Saginaw Zoning Board of Appeals ("the Board") from the minimum size requirements.

The Board considered New Par's request for a variance at its meetings on May 3, 2000, and June 7, 2000. At the meetings, New Par explained that it needed the property to fill a "gap" in its coverage area because there were no reasonable alternative sites. A few Board members and neighbors asked questions, and New Par agreed to look into a proposed alternative site and to landscape the area around the tower

---

[1] Light industrial uses include "[p]ublic and private utility buildings, telephone exchange buildings, electric transformer stations and substations, gas regulator stations, municipal pumping stations, lines, easements, installations and facilities, including storage yards." Saginaw Zoning Code § 1802(c); Joint Appendix ("J.A.") at 171-72.

base. On June 7, 2000, the Board denied New Par's request for a variance: of the six Board members, two voted for the request, three voted against the request, and one abstained. On June 28, 2000, New Par filed a complaint in the United States District Court for the Eastern District of Michigan against the City of Saginaw, alleging that the Board's denial of its request for a variance (1) violated the Telecommunications Act of 1996 (the "Act"), as codified at 47 U.S.C. § 332 *et seq.*; (2) violated New Par's substantive due process rights; and (3) constituted a regulatory taking. Both Saginaw and New Par subsequently filed motions for summary judgment.

On July 11, 2001, the district court issued an order granting New Par's motion for summary judgment and denying Saginaw's motion for summary judgment. The Act provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Although the district court concluded that the Board's decision in regard to New Par's variance request was "in writing" for the purposes of the Act, the court concluded that the decision was not supported by substantial evidence contained in a written record. Because the district court also concluded that it was appropriate to grant New Par injunctive relief for Saginaw's violation of the Act, the Court dismissed as "moot" New Par's substantive due process and regulatory takings claims.[2] Saginaw timely appeals.

---

**2**The district court ordered: "that within fourteen (14) days of the entry of this order, the defendant's Board of Zoning Appeals grant the plaintiff's application for a variance to depart from the frontage and square footage requirements so as to permit the construction and operation of a cellular telephone antenna facility at 2115 Durand Street." J.A. at 258 (Judgment).

and then gives the board the opportunity, if it chooses, to proffer another.").

Other circuits have also looked to the utility — or lack thereof — of a remand. *See, e.g., Brehmer v. Planning Bd.*, 238 F.3d 117, 121 (1st Cir. 2001) ("Because all relevant evidence was adduced at the initial hearing . . . a remand to the Planning Board would serve no useful purpose"); *Omnipoint Corp.*, 181 F.3d at 410 ("the Board has not suggested that any purpose would be served by remand"); *Cellular Tel. Co.*, 166 F.3d at 497 ("remand would serve no useful purpose in this case"). Given the facts that the property in this case is unlikely to change in size and that Saginaw and neighboring property owners already had two opportunities to present their opposition to New Par's variance request, we believe that the relevant evidence has already been adduced in this case. We therefore agree with the district court that remanding to the Board would serve no foreseeable useful purpose, and we conclude that the district court did not abuse its discretion in issuing an injunction ordering the Board to grant New Par's variance request.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court granting New Par's motion for summary judgment, and we **AFFIRM** the district court's issuance of an injunction ordering Saginaw to grant New Par's variance request.

§ 332(c)(7).  *See, e.g.*, *Preferred Sites, LLC, v. Troup County*, 2002 WL 1473139, _ F.3d _, at*8 (11th Cir. July 10, 2002) ("an injunction ordering issuance of a permit is an appropriate remedy for a violation of [47 U.S.C. § 332(c)(7)]"); *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 2002 WL 1544422, _ F.3d _, at *5 (1st Cir. June 18, 2002) ("in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to authorize construction"); *Omnipoint Corp.*, 181 F.3d at 410 ("Injunctions are proper forms of relief under § 332(c)(7)(B)(v)"); *Cellular Tel. Co.*, 166 F.3d at 497 ("an injunction ordering the Town to issue the permits was an appropriate remedy"); *see also Preferred Sites, LLC*, 2002 WL 1473139 at*8 n.12 (listing numerous district court cases in which the court issued an injunction for a violation of 47 U.S.C. § 332(c)(7)).[5]

In affirming the issuance of injunctions for violations of 47 U.S.C. § 332(c)(7), other circuits have looked to 47 U.S.C. § 332(c)(7)(B)(ii), which provides that "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed," and 47 U.S.C. § 332(c)(7)(B)(v), which provides that "[t]he court shall hear and decide [actions based on 47 U.S.C. § 332(c)(7)(B)(iii)] on an expedited basis."  *See, e.g. Nat'l Tower, LLC*, 2002 WL 1544422, at *5 ("The statutory requirements that the board act within 'a reasonable period of time,' and that the reviewing court hear and decide the action 'on an expedited basis,' indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason

---

[5]We are aware of only two district courts that have held that an injunction was not a proper remedy for a violation of 47 U.S.C. § 332(c)(7)(B)(iii).  *See PrimeCo. Pers. Communications, L.P. v. Village of Fox Lake*, 26 F. Supp. 2d 1052, 1066 (N.D. Ill. 1998); *AT&T Wireless Servs. of Fla., Inc. v. Orange County*, 982 F. Supp. 856, 860-62 (M.D. Fla. 1997).

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's order granting summary judgment.  *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1074 (2002).  Under Federal Rule of Civil Procedure 56(c), this court affirms a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing the district court's decision to grant summary judgment, this court must view all evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  We review for an abuse of discretion a district court's issuance of a permanent injunction.  *See Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002).

### B.  Telecommunications Act of 1996

The Telecommunications Act of 1996 provides in pertinent part as follows:

**(7)  Preservation of local zoning authority**

**(A)  General authority**

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

**(B)  Limitations**

(i)   The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof —
  (I)   shall not unreasonably discriminate among providers of functionally equivalent services; and
  (II)   shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
(ii)  A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7).  We have observed that "section 332(c)(7) 'is a deliberate compromise between two competing aims — to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers.'" *Telespectrum v. Pub. Serv. Comm'n*, 227 F.3d 414, 423 (6th Cir. 2000) (quoting *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 407 (3d Cir. 1999)).  As noted above, § 332(c)(7)(B)(iii) is at issue on this appeal.

**E.  Injunctive Relief**

Having concluded that the Board's decision did not comply with the "substantial evidence" requirement of 47 U.S.C. § 332(c)(7)(B)(iii), the district court issued an injunction ordering the Board within fourteen days to "grant the plaintiff's application for a variance to depart from the frontage and square foot requirements so as to permit the construction and operation of a cellular telephone antenna facility . . . ." J.A. at 258 (Judgment).  In weighing whether to issue an injunction or to remand the variance request to the Board, the district court stated:

One additional alternate remedy is to remand the matter to the Board of Zoning Appeals to conduct additional hearings.  Although to do so serves the purpose of affording deference to local authorities 'over decisions regarding the placement, construction, and modification of personal wireless service facilities,' 47 U.S.C. § 332(c)(7)(A), it also would undercut the express direction of Congress that such matters be promptly decided.  *See* 47 U.S.C. § 332(c)(7)(B)(v).  Further, ample opportunity has been provided to the City and the neighboring property owners to offer evidence which contradicts New Par's presentation, and no substantial evidence has been forthcoming.  Under these circumstances, a remand would serve no useful purpose and would only be the occasion for further delay.

J.A. at 255 (Op. and Order).

Although the Act does not provide a remedy for violations of 47 U.S.C. § 332(c)(7)(B)(iii), this court has previously concluded, albeit without discussion, that injunctive relief is an appropriate remedy for such violations. *See Telespectrum*, 227 F.3d at 419, 424 (affirming the order of the district court granting Telespectrum's motion for summary judgment and "ordering [the Public Service Commission of Kentucky] to issue Telespectrum a Certificate of Public Convenience and Necessity").  Other circuits have also held that injunctive relief is an appropriate remedy for violations of 47 U.S.C.

Zoning Code regarding when the Board can grant a zoning variance.

Furthermore, as the district court explained, there was no evidence presented at the Board meetings in regard to the four requisite findings delineated in Saginaw Zoning Code § 2714 that could weigh against New Par's variance request. The proposed cellular tower would have no effect on vehicular traffic, § 2714(b), and New Par claimed that it would not be a nuisance, § 2714(c). Although it is possible that the cellular tower would not constitute a use appropriate to the neighborhood, § 2714(a), or that the tower would negatively affect adjacent property values, § 2714(d), no evidence in regard to these factors was presented at the meetings.[4] Therefore, because New Par made an adequate showing that by reason of the property it would suffer "peculiar or exceptional practical difficulties" or "unnecessary undue hardship" without a variance from the Zoning Code's frontage and area requirements and because there is no evidence in a written record that would weigh against granting New Par's variance request, we conclude that the Board's denial of New Par's variance request was not supported by substantial evidence in a written record.

---

[4] As the district court noted, a Board member and a neighbor mentioned property values at the meetings, and other courts have held that community concerns constitute evidence for the purposes of substantial evidence review pursuant to the Act. *See AT&T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 430-31 (4th Cir. 1998). However, as the Fourth Circuit has explained, "[i]f a legislative body denies a permit based on *reasonably-founded* concerns of the community, then undoubtedly there is 'substantial evidence' to support the body's decision. If, however, the concerns expressed by the community are objectively unreasonable, such as concerns based upon conjecture or speculation, then they lack probative value and will not amount to substantial evidence." *Petersburg Cellular P'ship v. Bd. of Supervisors*, 205 F.3d 688, 695 (4th Cir. 2000) (emphasis in original). In this case, the voiced concerns of the Board member and the neighbor regarding property values were clearly speculative.

---

## C. "In Writing" Requirement

New Par argues that the Board's denial of its variance request violated 47 U.S.C. § 332(c)(7)(B)(iii) because the denial was not "in writing" for the purposes of the Act. The district court described the Board's decision in this case as follows:

> In the instant case, the zoning board of appeals did not issue written reasons for its decision. It did, however, issue an order summarizing the request, the decision, and the votes of individual board members. The order does state that the denial was "[b]ased on the facts presented and the Board's determination, both of which will appear in the minutes of this meeting."

Joint Appendix ("J.A.") at 248 (Op. and Order) (emphasis in original omitted); *see also* J.A. at 137 (Bd. Order). The district court then concluded, after reviewing some of the case law from other district courts, that the Board's denial satisfied the "in writing" requirement. We have not defined the "in writing" requirement of the Act in this circuit, and we recognize that other courts have differed in their interpretations of the requirement. We now, however, adopt a definition of the "in writing" requirement similar to the definition adopted by the First Circuit, and we conclude that, under this definition, the Board's denial of New Par's variance request was not "in writing" for the purposes of the Act.

Courts have varied considerably in their interpretations of the "in writing" requirement of 47 U.S.C. § 332(c)(7)(B)(iii). On one end of the spectrum are a few district court cases that interpret the Act's "in writing" requirement to require decisions setting forth the reasons for the decision and linking the reasons to record evidence. *See, e.g., Omnipoint Communications, Inc. v. Planning & Zoning Comm'n*, 83 F. Supp. 2d 306, 309 (D. Conn. 2000). On the other end of the spectrum, the Fourth Circuit has held that the stamping of "denied" on a zoning application satisfied the "in writing" requirement: "the City Council's decision was clearly 'in

writing,' and the district court could only find to the contrary by importing additional language into the statute." *AT&T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 429 (4th Cir. 1998); *see also AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment*, 172 F.3d 307, 312-13 (4th Cir. 1999). In a recent opinion, the First Circuit carefully evaluated the opposing precedents and took a middle position, concluding:

> [The Act] requires local boards to issue a written denial separate from the written record. That written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons.

*Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001). The *Todd* court explained that "[t]he requirement of formal findings of fact and conclusions of law has no basis in the language of the Act. . . . On the other hand, permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale." *Id.* at 59-60.

We find the reasoning of the *Todd* court persuasive. We hold that for a decision by a State or local government or instrumentality thereof denying a request to place, construct, or modify personal wireless service facilities to be "in writing" for the purposes of 47 U.S.C. § 332(c)(7)(B)(iii), it must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons. In this case, the Board's order denying New Par's variance request was separate from the written record, but it did not contain any explanation of the reasons for the denial. The order simply stated that "[b]ased on the facts presented and the Board's determination, both of which will appear in the minutes of this meeting, it is ordered that [New Par's variance request] is hereby . . . **Denied**." J.A. at 137 (Bd.

Par's variance request because New Par did not produce any evidence that: (1) the proposed use would be in harmony with the orderly development of the surrounding neighborhood; (2) the height of the structure would not affect the value of the adjacent land; and (3) there were exceptional circumstances not found in other areas of the same zoning district. However, this court simply reviews the Board's *denial* of New Par's variance request under the Act's substantial evidence test. *See Omnipoint Corp.*, 181 F.3d at 408 ("[t]he substantial evidence test applies to the locality's own zoning requirements." (quotation omitted)). In order to comply with the Act, the Board's decision to deny a variance must be supported by substantial evidence contained in a written record; the Board's view on appeal, therefore, of what additional evidence it needed in order to grant New Par's variance request is irrelevant.

We conclude that the Board's denial of New Par's variance request was not supported by substantial evidence contained in a written record. Only three concerns about the cellular tower were raised at the Board meetings: (1) aesthetics; (2) health and safety issues regarding electromagnetic emissions; and (3) whether New Par could instead put the tower on railroad property owned by CSX. In regard to the first concern, other circuits have held that a "few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence on which the Town could base the denials." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 496 (2d Cir. 1999); *see also Omnipoint Corp.*, 181 F.3d at 409. At the Board meetings in this case, aesthetic concerns were mentioned only a few times, and they were never discussed. *See, e.g.*, J.A. at 184 (May 3, 2000 Meeting Tr.); 194 (June 7, 2000 Meeting Tr.). In regard to the second concern, the Act explicitly prohibits local board decision-making "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). And the third concern simply does not go to any of the criteria set out in the

frontage and area requirements to the property. Third, New Par's hardship is suffered merely by its property in that owners of other properties zoned for M-1 use can use their properties for M-1 uses. Fourth, New Par's hardship is not the result of its own actions, and, fifth, as explained above, New Par's hardship is peculiar to the property. Therefore, as the district court also found, New Par did make a showing at the Board meetings that, by reason of the property, application of the minimum frontage and area requirements would cause New Par "practical difficulties and/or unnecessary hardships."

The Saginaw Zoning Code also provides that in considering all appeals and proposed variances from the Code, the Board must make the following findings:

a.  The proposed use will be of such location, size, and character that it will be in harmony with the appropriate and orderly development of the surrounding neighborhood.

b.  The proposed use will be of a nature that will make vehicular and pedestrian traffic no more hazardous than is normal for the district involved . . . .

c.  The location, size, intensity, site layout, and periods of operation of any such proposed use will be designed to eliminate possible nuisance emanating therefrom which might be noxious to the occupants of any other nearby permitted uses, whether by reason of dust, noise, fumes, vibration, smoke, or lights.

d.  The location and height of buildings or structures and the location, nature, and height of walls and fences will be such that the proposed use will not interfere with or discourage the appropriate development and use of adjacent land and buildings or unreasonably affect their value.

Saginaw Zoning Code § 2714; J.A. at 169. On appeal, Saginaw contends that the Board legitimately denied New

Order). Therefore, we conclude that the Board's order was not "in writing" for the purposes of the Act.

**D.  Substantial Evidence Requirement**

The district court granted New Par's motion for summary judgment because it concluded that the Board's decision to deny New Par's variance request was not supported by substantial evidence contained in a written record. We agree with this conclusion. We have stated that "the 'substantial evidence' standard of section 332 is the traditional standard employed by the courts for review of agency action." *Telespectrum*, 227 F.3d at 423; *see also* H.R. Conf. Rep. No. 104-458 (1996) ("[t]he phrase, 'substantial evidence contained in the written record' is the traditional standard used for judicial review of agency actions."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "This Court reviews the entire record, including evidence opposed to the result of the decision." *Telespectrum*, 227 F.3d at 423 (citing *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981)).

The Saginaw Zoning Code authorizes the Board to grant variances from the strict application of any provision of the Code:

where by reason of exceptional irregularity, narrowness, shallowness, shape or area of a specific piece of property, or by reason of exceptional topographic conditions or other extraordinary or exceptional conditions of such property, the strict application of the provisions of this Ordinance would result in peculiar or exceptional practical difficulties to or unnecessary undue hardship upon the owner of such property.

Saginaw Zoning Code § 2712(a); J.A at 167. In order to qualify for a variance, New Par therefore had to show that *by*

*reason of the property*, application of the Code's minimum frontage and area requirements would cause New Par "peculiar or exceptional practical difficulties" or "unnecessary undue hardship."[3] We believe that New Par did make such a showing. At the Zoning Board meetings, New Par argued that it suffered unnecessary undue hardship by reason of the property. A New Par representative argued at the first meeting that:

> With regards to the specific hardship . . . suffice [it] to say that what we have here is a legally existing lot. Verizon did not create this lot, did not split it off and end up with some small piece. It is a legally existing lot within the M-1 Zoning District. I have looked at the permitted uses and special approved uses for M-1 and there isn't a single one that can reasonably or even remotely be operating on such a small parcel. The hardship is basically that it is impossible to develop this property for any use absent the variance.

J.A. at 177-78 (May 3, 2000 Meeting Tr.). And a New Par representative argued at the second meeting that:

> I guess the bottom line is that the [sic] if you think of hardship what could anybody do with that lot that's

---

[3]Saginaw argues on appeal that the district court erred by factoring into its assessment of New Par's "peculiar or exceptional practical difficulties" or "unnecessary undue hardship" New Par's business need to erect a cellular tower in Saginaw. Because the Zoning Code seems clearly to limit "peculiar or exceptional practical difficulties" or "unnecessary undue hardship" to conditions of the property itself, we agree with Saginaw that the district court should not have taken into account New Par's business need to erect a cellular tower in a certain area. We therefore do not follow the district court's reasoning to the extent that it took such business need into account. *See, e.g.,* J.A. at 252 (Op. and Order) ("New Par offered evidence at the hearings that it needed to install a new tower within its 'search ring' in order to meet the needs of its customers and comply with new requirements imposed by the FCC. . . . New Par also offered evidence of its failed efforts to acquire other property in the M-1 district, and noted that other property within the search ring was zoned for residential use.").

permitted? I mean I don't think that the size of that lot will permit anybody to [do] anything as a practical matter without coming in with a variance.

J.A. at 194 (June 7, 2000 Meeting Tr.). As the district court found, "New Par's proposed use is consistent with existing zoning, but the unique size of the lot in the rezoned area does not permit compliance with the frontage and square foot requirements of the ordinance." J.A. at 252 (Op. and Order).

In addition, New Par meets all of the criteria listed in the Zoning Code for determining the existence of "practical difficulties and/or unnecessary hardships." Saginaw Zoning Code § 2712(b) provides that:

> b.   In hearing and deciding appeals for variances, the Board of Appeals on Zoning shall adhere to the following criteria in determining whether practical difficulties and/or unnecessary hardships exist.
>   1.   That if the property owner complies with the provisions of this Ordinance he can secure no reasonable return from or make no reasonable use of his property.
>   2.   That the hardship results from the application of this Ordinance to his property, rather than from some other factor.
>   3.   That the hardship of which he complains is suffered merely by his property directly, and not by others.
>   4.   That the hardship is not the result of his own actions.
>   5.   That the hardship is peculiar to the property of the applicant.

Saginaw Zoning Code § 2712; J.A at 167-68. First, if the property cannot be used for the kind of uses for which it is zoned, it seems likely that New Par, or any owner of the property, will not be able to make reasonable use of the property. Second, New Par's hardship — its inability to use the property — results from the application of the minimum