**USOC OF GREATER IOWA, INC.,**
**substituted for U.S. Cellular**
**Corp., Plaintiff,**

v.

**CITY OF BELLEVUE, NEBRASKA,**
**Defendant.**

**No. 4:03CV3197.**

United States District Court,
D. Nebraska.

Aug. 28, 2003.

Bret A. Dublinske, Dickinson, Macka-
man Law Firm Lincoln, NE, Krista K.
Tanner, Dickinson, Mackaman Law Firm
Des Moines, IA, Steven G. Seglin, Crosby,
Guenzel Law Firm, Lincoln, NE, for Plain-
tiff.

Michael D. McClellan, Nelson, Mcclellan
Law Firm Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This case presents the question of
whether the City of Bellevue wrongly de-
nied an application for a conditional use
permit that would have allowed the con-
struction and operation of a cell phone
tower. The primary issue is whether the
City's denial of the permit was "in writing"
and "supported by substantial evidence
contained in a written record" as required
by a provision of the federal Telecommuni-
cations Act.

After a bench trial, I find and conclude
that the City of Bellevue's denial of the
permit fails to meet the standards estab-
lished by the Telecommunications Act. I,
therefore, grant the plaintiff the injunctive
relief it seeks. My reasons, including the
required Fed.R.Civ.P. 52 findings of facts
and conclusions of law, are set forth be-
low.[1]

## I.  BACKGROUND

### Denial of Application for Conditional Use Permit

Plaintiff USOC of Greater Iowa, Inc.
(USOC)[2] is a provider of Commercial Mo-
bil Radio Services under the federal Com-
munications Act of 1934 as amended. It is
a new entrant into the Omaha basic trad-
ing area, is federally licensed to provide
wireless service in the Omaha metropolitan
area, and is seeking to build sufficient
infrastructure to offer service to customers
in, around, and traveling through Bellevue,
Nebraska (a community in the Omaha
metropolitan area). (Filing 22 (Index of
Exhibits of Joint Stipulation, including ex-
hibits 1 through 10 (hereinafter, Admin.R.,
"Ex.———")), at Ex. 4 at pp. 3–5.) It pro-
vides wireless service under the brand
name U.S. Cellular and is a local operating
affiliate of United States Cellular Corpora-
tion. On February 14, 2003, an applicant
named "MegaCom" applied for a condition-
al use permit and approval of a site plan at

---

1. Any factual finding that should more prop-
erly be considered a conclusion of law shall
be so construed. In the same vein, any con-
clusion of law that should more properly be
considered a factual finding shall be so con-
strued.

2. The plaintiff provides wireless service in
Nebraska under the brand name U.S. Cellu-
lar, but its legal name is USCOC of Greater

Iowa, Inc. The court granted the plaintiff
leave to amend the complaint to change its
name (filings 20 and 24). Pursuant to Fed.
R.Civ.P. 17(a) (regarding real parties in inter-
est), and Fed.R.Civ.P. 15(b) (amendments to
conform to the evidence), USCOC of Greater
Iowa, Inc. has been substituted as the plaintiff
despite the failure to file a formal amended
complaint.

a location within the city limits of the City of Bellevue. (Admin. R., Ex. 5 at p. 4.) MegaCom was acting as agent for U.S. Cellular Company. (*Id.*)

The staff of the Bellevue Planning Commission recommended that the conditional use permit be granted. (Admin. R., Ex. 2 at p. 7.) At a March 20, 2003 meeting which included a public hearing, the Bellevue Planning Commission recommended denial of the permit. (Admin. R., Ex. 6 at p. 5.) The matter then went to the Bellevue City Council. After a public hearing which included the testimony of representatives of Plaintiff and of nine neighbors [3], the City Council denied the permit. (Admin. R., Ex. 3 at pp. 4–6.) The official minutes reflect that on a roll call vote, all council members present voted to deny the permit. (Admin. R., Ex. 3 at p. 6.)

### The Telecommunications Act

The Telecommunications Act of 1966, Pub.L. No. 104–104, 110 Stat. 56 (codified primarily in scattered sections of 47 U.S.C.) amended the Telecommunications Act of 1934. The 1996 amendments were intended " 'to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition....' " *Independent Wireless One Corp. v. Town of Charlotte*, 242 F.Supp.2d 409, 414 (D.Vt.2003) (quoting H.R. Conf. Rep. No. 104–458, at 206 (1996)). In the 1996 amendments, "Congress sought to strike 'a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control of siting of towers.' " *Town of Amherst v. Omnipoint*, 173 F.3d 9, 13 (1st Cir.1999). This compromise is evidenced by the tension between the two main subparts of 47 U.S.C. § 332(c)(7): Congress explicitly preserved local zoning authority over the siting of wireless facilities, 47 U.S.C. § 332(c)(7)(A), yet placed limitations on local regulation of "the placement, construction, and modification of personal wireless service facilities," 47 U.S.C. § 332(c)(7)(B). The limitations of section 332(c)(7)(B) are at the heart of this case.

The key provision of section 332 is this: "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be *in writing* and *supported by substantial evidence contained in a written record.*" 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). Though the complaint alleged that other limitations of section 332(c)(7)(B) were violated [4], at oral argument counsel for Plaintiff agreed that full relief could be granted if the court's findings were limited to the "in writing" and "substantial evidence" requirements. (Transcript of bench trial 26–29 (hereinafter 'Tr. ——.').) For that reason, and in the interest of judicial economy, I do not reach the issues regarding possible violation of other limitations set forth in section 332(c)(7)(B).

### These Proceedings

This suit was filed on May 28, 2003, seeking declaratory and injunctive relief for violation of the federal Telecommunica-

---

**3.** Eight neighbors spoke in opposition to granting the permit, and one spoke in favor of it. (Admin. R., Ex. 4 at pp. 13–31, 37–38.)

**4.** The complaint also alleged violations of § 332(c)(7)(B)(i)(I), prohibiting decisions that

"unreasonably discriminate among providers of functionally equivalent services," and § 332(c)(7)(B)(i)(II), proscribing decisions that "prohibit or have the effect of prohibiting the provision of personal wireless services."

tions Act and federal and state due process violations.[5] (Filing 1.) This court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1337 and the pendant state claims under 28 U.S.C. § 1367. The parties agreed to consolidate the hearing on Plaintiff's motion for a preliminary injunction with trial on the merits. (Filing 14.) The trial, held August 18, 2003, consisted of admission of the administrative record into evidence and oral argument. The parties had fully briefed the case prior to trial. At trial, Plaintiff's counsel stated that he would not renew his motion for preliminary injunction after the court stated that a decision on the merits would be reached by August 28, 2003. (Tr. 89–90.)

### The Record

The administrative record subject to review is found at filing 22. Exhibits 1 through 10 of filing 22were made part of the evidentiary trial record without objection. Filing 22 also includes Exhibit 11, an April 21, 2003 letter from counsel for Plaintiff to John Herdzina, the Bellevue City Attorney. Exhibit 11 was admitted into evidence upon the understanding that there is no evidence in the record that the letter was shared by the addressee with the city council members. (Tr. 9.) In other words, Exhibit 11 is not part of the administrative record subject to review. The pertinent trial record is contained in filing 22 (the Administrative Record and Exhibit 11).

### II. ANALYSIS

I first consider the "in writing" and "substantial evidence" requirements of 47 U.S.C. § 332(c)(7)(B)(iii). I then briefly address the Tenth Amendment and due process claims.

---

5. The complaint also asserted a "state law petition of error." Because Plaintiff did not brief this claim, I deny it without further comment. *See, e.g.,* NELR 39.2(c)("[T]he fail-

### "In writing" Requirement

■ Section 332(c)(7)(B)(iii) provides in part that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be *in writing* . . . ." (Emphasis added). Interpretations of this "in writing" requirement vary from requiring that a written decision both set forth the reasons for the decision and link those reasons to record evidence to finding that stamping the word "denied" on a zoning application is sufficient. *See, e.g., New Par v. City of Saginaw,* 301 F.3d 390, 395–96 (6th Cir.2002) (collecting cases); *Southwestern Bell Mobile Sys., Inc. v. Todd,* 244 F.3d 51, 59 (1st Cir.2001) (collecting cases). The Eighth Circuit has not yet ruled on this issue. I find that neither of the two extremes of interpretation are appropriate. First, the language of section 332(c)(7)(B) does not support a requirement that the decision maker make formal findings of fact and conclusions of law. Second, "permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale." *Todd,* 244 F.3d at 59–60. Accordingly, I adopt the middle ground followed by the First and Sixth Circuits. *New Par,* 301 F.3d at 395–96; *Todd,* 244 F.3d at 60. I find as follows:

for a decision by a State or local government or instrumentality thereof denying a request to place, construct, or modify personal wireless facilities to be 'in writing' for the purposes of 47 U.S.C. § 332(c)(7)(B)(iii), it must (1) be separate from the written record; (2) de-

---

ure . . . to discuss an issue in the brief submitted may be treated as an abandonment of that party's position on any issue not discussed.")

scribe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons.

*New Par,* 301 F.3d at 395–96 (finding that a local zoning board's order, although separate from the written record, was not "in writing" because it did not contain any explanation of the reasons for denial).

Applying this standard, I find that the decision of the Bellevue City Council was not "in writing" within the meaning of 47 U.S.C. § 332(c)(7)(B)(iii). It was not separate from the written record. The minutes of the City Council meeting reflect only that the application was unanimously denied on a roll call vote. No other writing states the final decision. The minutes of the City Council meeting contain neither stated reasons for the denial nor an explanation of reasons for the denial adequate to permit this court to evaluate whether evidence in the record supports those reasons. There simply is no "sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons."

### Substantial Evidence Requirement

■ Even if I were to find that the "in writing" requirement is somehow met on this record (and I do not), I would still conclude that the Bellevue City Council's decision violates the Telecommunications Act because it fails to meet the other requirement imposed by 47 U.S.C. § 332(c)(7)(B)(iii): it is not "supported by substantial evidence contained in a written record."

■ Courts interpreting the substantial evidence standard of section 332 have applied "the traditional standard employed by the courts for review of agency action." *New Par,* 301 F.3d at 396. *See also,* H.R. Conf. Rep. No. 104–458 (1996) ("[t]he phrase, 'substantial evidence contained in

the written record' is the traditional standard used for judicial review of agency actions.") Under that traditional standard of review,

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mississippi Transp. Inc. v. NLRB,* 33 F.3d 972, 977 (8th Cir.1994) (quoting *GSX Corp. v. NRLB,* 918 F.2d 1351, 1356 (8th Cir.1990)). Under the substantial evidence test, however, we must take into account evidence that detracts from the Board's decision and " 'must view the inherent strengths and weaknesses of the inferences drawn by the Board.' " *GSX Corp.,* 918 F.2d at 1357 (quoting *NLRB v. American Postal Workers Union,* 618 F.2d 1249, 1254 (8th Cir.1980)).

*Carleton College v. NLRB,* 230 F.3d 1075, 1078 (8th Cir.2000) (labor relations case). The Eighth Circuit has recently reaffirmed this more rigorous review:

We will affirm the ALJ's findings if they are supported by substantial evidence on the record as a whole.... However, the review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision[;] we also take into account whatever in the record fairly detracts from that decision.

*O'Donnell v. Barnhart,* 318 F.3d 811, 816 (8th Cir.2003) (internal quotation and citation omitted) (review of denial of social security benefits).

Federal circuit courts interpreting the Telecommunications Act have followed this same standard. *See, e.g., Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 (2d Cir.1999) (applying traditional standard used for judicial review of federal agency decisions and requiring consideration of the evidence opposed to the decision); *Omnipoint Corp. v. Zoning Hear-*

*ing Bd.,* 181 F.3d 403, 408 (3d Cir.1999) (same); *New Par,* 301 F.3d at 396 (6th Cir.) (same); *Preferred Sites, L.L.C. v. Troup Cty.,* 296 F.3d 1210, 1218 (11th Cir.) (same).

The parties dispute who has the burden of proof on the substantial evidence question. I need not resolve this question, as even if Plaintiff bears the burden of proof, Plaintiff has met it.

■ Under the substantial evidence test, I look at the record as a whole and consider evidence against the denial as well as evidence supporting it. There is much evidence in support of Plaintiff's permit application. I have already noted that the City's planning staff recommended that the application be granted because it complied with the City's siting ordinance. (Admin. R., Ex. 2 at pp. 4–7.) In addition, Plaintiff provided computer models showing cell phone coverage with and without the tower which indicated the need for the tower. (Admin. R., Ex. 5 at pp. 11–12. *See also* Admin. R., Ex. 10 (propagation maps).) Plaintiff provided detailed technical information on the proposed structure. (Admin. R., Ex. 5 at pp. 16–27.) Plaintiff provided a letter from its real property consultant detailing point-by-point how the application met the criteria of the City ordinance. (Admin. R., Ex. 5 at pp. 80–81.) At the hearing, witnesses for Plaintiff presented additional propagation maps explaining why co-locating on the existing Sprint PCS tower would not work. (See Admin. R., Ex. 4, passim.) At the hearing, Plaintiff's real property consultant referred to a study done for the city of Lincoln, Nebraska by a certified

appraiser which showed that property values were not affected by cell towers. (Admin. R., Ex. 4 at pp. 8–9.)

The Bellevue City Council gave no reasons, either orally or in writing, for discounting any of this evidence in favor of granting the conditional use permit. Eight layperson residents spoke in opposition to the tower, expressing only generalized concerns about aesthetics and property values. (Admin. R., Ex. 3 at pp. 5–6 and Ex. 4 at pp. 13–31, 37–38.) These "NIMBY" (not in my backyard) concerns do not constitute substantial evidence. *See, e.g., regarding opposition based on aesthetics, New Par,* 301 F.3d at 398 (a few generalized concerns regarding aesthetics cannot serve as substantial evidence); *Troup Cty.,* 296 F.3d at 1219 (58 residents signed petitions against a cell tower and court found that "the citizens' generalized concerns about aesthetics are insufficient to constitute substantial evidence...."); *Oyster Bay,* 166 F.3d at 496 ("generalized expressions of concerns with 'aesthetics' cannot serve as substantial evidence" for denying a permit); *regarding layperson concern about property values,*[6] *Zoning Hearing Bd.,* 181 F.3d at 409 (generalized concerns about property values and visual impact not substantial evidence); *Oyster Bay,* 166 F.3d at 496 ("[a] few generalized concerns about a potential decrease in property values, especially in light of ... contradictory expert testimony [from real-estate appraiser who conducted study]" not substantial evidence). Indeed, counsel for the City acknowledged at trial that these "NIMBY" concerns expressed by the eight residents did not constitute "substan-

---

**6.** I do not find that concern about property values can never constitute substantial evidence. Rather, I find that generalized property value concerns by laypersons are insubstantial. Expert testimony regarding property values could constitute substantial evidence. *See, e.g., Cellular Tel. Co. v. Zon-*

*ing Bd. of Adjustment,* 197 F.3d 64, 72 (3d Cir.1999) (upholding finding of zoning board of borough of Ho–Ho–Kus that monopole would have detrimental impact on property values when finding was based on expert testimony).

tial evidence" for purposes of section 332(c)(7)(B)(iii). (Tr. 54.)

■ The City urges me to find that the application was denied because the applicant did not meet applicable setback requirements. Unfortunately for the City, no city council member expressed concerns about noncompliance with setbacks prior to the denial of the permit. Post-hoc rationales cannot serve as substantial evidence. *Troup Cty.*, 296 F.3d at 1220 n. 9 ("[the decision maker] may not rely on rationalizations constructed after the fact to support the denial of [the applicant's] application."). In fact, the record reflects that the staff of the planning commission was aware that the setback requirement to the north was not met, yet still recommended that the conditional use permit be granted. (Admin. R., Ex. 2 at pp. 4–7.)

The setback at issue is a requirement that the cell tower be located at least 150 feet from property zoned residential on the north side of the tower location. This unusually large setback requirement is imposed to ensure that no residents would be harmed by the fall of the tower. There was no testimony by residents who could have been effected by a fall of the cell tower. The owners of two properties near the tower site mentioned setbacks when they testified at the hearing before the city council, but those property owners live on 13th Street, which is west of the tower site. (Admin. R., Ex. 4 at pp. 25, 28 (testimony of Mruz family about proximity of tower to 13th street, the street they live

on (see Admin. R., Ex. 3 at 5), which is west of the site (see Admin. R., Ex. 5 at p. 5(map); Admin. R., Ex. 4 at pp. 17–23 (vague testimony of Mr. Lorence that tower is too close) [7]. In addition, the setback on the north side is 150 feet only because the property adjacent to the north boundary of the site is zoned residential, and there is undisputed evidence that this parcel to the north will not be used as a residence because it is crossed by transmission lines. (Admin. R., Ex. 4 at pp. 7–8.)

### Tenth Amendment Claim

■ The City asserts that the "in writing" and "supported by substantial evidence" requirements of the Telecommunications Act violate the Tenth Amendment to the United States Constitution.[8] The only case law the City cites in direct support of its Tenth Amendment claim is *Petersburg Cellular P'ship v. Board of Supervisors*, 205 F.3d 688, 705 (4th Cir.2000) (two of three judges on panel agreed that board's decision denying special use permit for tower was not supported by substantial evidence; Judge Niemeyer was of sole opinion that the substantial evidence requirement " 'commandeer[s]' the County's legislative process and is therefore unconstitutional under the Tenth Amendment.") To the extent the City still raises a Tenth Amendment claim, I reject that claim. I decline the follow the view of one judge in another circuit.

---

7. The City represents that Mr. Lorence "presented evidence … that the proposed tower would be 125 feet from one of his properties." (Filing 18, D.'s Br. at 29–30) (citing Admin. R., Ex. 5 at pp. 2–3 (photographs taken from unidentified location)). It is not clear wither Mr. Lorence so testified, and even if he did, he lives on 13th Street, which is west of the tower site. (Admin. R., Ex. 3 at 5.)

8. However, in oral argument, the City admitted that no Tenth Amendment issue would arise under the "in writing" requirement if I were to find that "in writing" means simply that the ultimate conclusion of the decision maker must be stated in a manner that can be measured against the record (as opposed to finding, which I have not, that the "in writing" requirement compels the decision maker to make formal findings of fact and conclusions of law). (Tr. 70.)

### Due Process Claims

Given the court's resolution of the Telecommunications Act claims, and because federal courts are required to avoid unnecessary and broad adjudication of constitutional issues, I do not reach the merits of the due process claims. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *American Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 161, 109 S.Ct. 1693, 104 L.Ed.2d 139 (1989) (district court should not pass on constitutional question unless it was "imperative" on remand in case involving statute which precluded use of appropriated funds to implement or enforce nondisclosure agreements signed by Executive Branch employees; "courts should be extremely careful not to issue unnecessary constitutional rulings").

### Remedy

█ The appropriate remedy under these circumstances is issuance of an injunction, not a remand. The majority of courts have held that injunctive relief is the appropriate remedy for a section 332(c)(7) violation. *See, e.g., New Par*, 301 F.3d at 399–400; *Troup Cty.*, 296 F.3d at 1222; *National Tower, L.L.C. v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 21–22 (1st Cir.2002); *Pine Grove*, 181 F.3d at 410; *Oyster Bay*, 166 F.3d at 497. The Telecommunications Act has an explicit goal of expediting resolution of tower disputes. *See* 47 U.S.C. § 332(c)(7)(B)(v) ("[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph [§ 332(c)(7)(B) ] may, *within 30 days* after such action or failure to act, commence an action in a court of competent jurisdiction. The court shall hear and decide such action *on an expedited basis.*") (emphasis added).

The City urges that I remand the case rather than issue an injunction. Although remand may be appropriate in cases where the record reflects that the decision maker had a legitimate concern that was either not addressed or was not adequately addressed, this is not such a situation. *See, e.g., Nextel Communications of the Mid-Atlantic, Inc., v. Town of Randolph*, 193 F.Supp.2d 311, 318–19 (D.Mass.2002) (written decision of board was "nebulous" as to whether board members based denial on setback noncompliance or other noncompliance with siting ordinance due to mis-cite of setback requirements, so remand was appropriate remedy). Here, remand would merely give the City a chance to find post-hoc evidence to support its denial and is not warranted.

## III. CONCLUSION

Although I respect the City of Bellevue's interest in preserving local zoning control, the Telecommunications Act requires that zoning decisions that deny requests to place cell phone towers be in writing and supported by substantial written evidence. The City failed to meet these requirements. Therefore,

IT IS ORDERED that:

1. The April 28, 2003, decision of the Bellevue City Council denying Plaintiff's application for a conditional use permit is vacated;

2. Defendant shall issue such permits, licenses and orders as are needed to construct Plaintiff's cell tower at the subject property, which is part of Lot 7, Old Orchard Place, located in the southeast1/4, Section 22, T14N R13E of the 6th P.M., Sarpy County Nebraska, generally located

at Kasper Street and 13th Street in Bellevue, Nebraska;

3. Defendant is hereby directed to issue the conditional use permit sought by Plaintiff without further delay or obstacle to Plaintiff, and in any event no later than 10 days after the date of this judgment; and

4. This court shall retain jurisdiction of this action for the limited purpose of enforcement of its judgment and only until such permits, licenses and orders as are needed to construct Plaintiff's cell tower have been issued.

## JUDGMENT

Pursuant to the memorandum and order entered this date, judgment is entered for Plaintiff[1] and against Defendant, providing that

1. The April 28, 2003, decision of the Bellevue City Council denying Plaintiff's application for a conditional use permit is vacated;

2. Defendant shall issue such permits, licenses and orders as are needed to construct Plaintiff's cell tower at the subject property, which is part of Lot 7, Old Orchard Place, located in the southeast1/4, Section 22, T14N R13E of the 6th P.M., Sarpy County Nebraska, generally located at Kasper Street and 13th Street in Bellevue, Nebraska;

3. Defendant is hereby directed to issue the conditional use permit sought by Plaintiff without further delay or obstacle to Plaintiff, and in any event no later than 10 days after the date of this judgment; and

4. This court shall retain jurisdiction of this action for the limited purpose of enforcement of this judgment and only until such permits, licenses and orders as are

needed to construct Plaintiff's cell tower have been issued.

---

**1.** Regarding Plaintiff's claim for court costs, Plaintiff should comply with the provisions of NELR 54.1. If Plaintiff believes it is entitled to attorneys' fees, it should comply with the provisions of Fed.R.Civ.P. 54(d)(2). *See* NELR 54.3.