United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-10491
_____

UNITED STATES CELLULAR CORPORATION,

                                    Plaintiff-Appellant,

versus

CITY OF WICHITA FALLS, TEXAS; WICHITA FALLS CITY COUNCIL,

                                    Defendants-Appellees.

---------------------
Appeal from the United States District Court
for the Northern District of Texas
---------------------

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

United States Cellular Corporation, a provider of wireless telephone services, sued the City of Wichita Falls for denying U.S. Cellular permission to build a communications tower. U.S. Cellular contended that the City's decision was not supported by substantial evidence in a written record and therefore violated a provision of the Telecommunications Act of 1996, 47 U.S.C.A. § 332(c)(7)(B)(iii) (West 2001). The district court granted summary judgment for the City. Because we agree with the district court that the City's determination was supported by substantial evidence, we affirm.

I.

The Telecommunications Act of 1996 balances two competing

concerns.  *ATC Realty, LLC v. Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002).  On one hand, Congress found that "siting and zoning decisions by non-federal units of government[] have created an inconsistent and, at times, conflicting patchwork of requirements" for companies seeking to build wireless communications facilities.  H.R. Rep. No. 104-204, at 94 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 61.  On the other hand, Congress "recognize[d] that there are legitimate State and local concerns involved in regulating the siting of such facilities."  *Id.* at 94-95, *reprinted in* 1996 U.S.C.C.A.N. at 61.  Congress reconciled these conflicting interests by explicitly preserving the zoning authority of local governments, *see* 47 U.S.C.A. § 332(c)(7)(A) (West 2001), but imposing substantive and procedural limits on the exercise of that authority, *see id.* § 332(c)(7)(B).  In particular, the Act requires that a locality's decision to deny a building permit be "supported by substantial evidence contained in a written record."  *Id.* § 332(c)(7)(B)(iii).

The substantial evidence requirement is the focus of this suit.  In 2001, U.S. Cellular identified a gap in its coverage in southwest Wichita Falls.  To remedy the gap, U.S. Cellular leased a 45-foot-square parcel of land and planned to build an 85-foot tower with a 5-foot lightning rod.  According to U.S. Cellular, the tower was extremely unlikely to fall; similar towers had withstood hurricane- and tornado-force winds.

Pursuant to city ordinance, U.S. Cellular applied for a conditional use permit from the Wichita Falls Planning and Zoning Commission ("PZC"). *See* Wichita Falls, Tex., Zoning Ordinance § 5910 (2001). The PZC investigated U.S. Cellular's application, compared it to the City's recently passed zoning ordinance for communications towers,[1] and issued a report. The report found that the proposed tower did not meet several of the guidelines set forth in the ordinance. First, the ordinance provides that "[a] communications tower should be setback from rights-of-way and adjacent properties equivalent to the height of the tower." Wichita Falls, Tex., Zoning Ordinance § 5910(A) (2001). The proposed 90-foot tower would have been set back only 17.5 feet from the northern property line, only 60 feet from the southern property line, and only 25 feet from the eastern property line. However, PZC staff determined that the setbacks would still have been consistent with the intent of the ordinance because the tower would have met "minimum wind load requirements" and would have been compatible with adjacent land uses and zoning districts. Second, the zoning ordinance provides that towers "shall not be located closer than 300 feet from [an adjacent] residential use or residential zoning boundary." Wichita Falls, Tex., Zoning Ordinance § 5910(A)(1). The proposed tower would have been set back only 220 feet from the nearest residence and only 260 feet

_____

[1] Neither party has suggested that the City enacted this ordinance to stymie U.S. Cellular or any other potential builder of communications towers.

3

from the nearest residential zone. Once again, however, the PZC determined that the setbacks would be sufficient because "[t]he height of the proposed tower [would] not [have] pose[d] a hazard to any adjacent residential structure" and because "[b]eing separated from neighboring residential districts by commercial uses [would have] insure[d] protection of these areas both from a safety and aesthetic standpoint." The PZC ultimately voted 7-1 to approve the application conditionally but made full approval subject to U.S. Cellular obtaining a variance from the Airport Board of Adjustment, which had to determine that a 90-foot tower would not interfere with the operations of nearby Kickapoo Airpark.[2]

The Airport Board of Adjustment denied U.S. Cellular's request for a variance. To comply with the ruling of the Airport Board, U.S. Cellular reduced the size of the proposed tower from 90 feet to 62.8 feet. Although U.S. Cellular had maintained that it required a 90-foot tower, it did not challenge the Airport Board's decision.

Meanwhile, a local resident appealed the PZC's decision to the Wichita Falls City Council. *See* Wichita Falls, Tex., Zoning Ordinance § 7245 (2001) (providing for appeal). In July 2001, the Council heard presentations from U.S. Cellular and from Wichita

---

[2]   The PZC held a hearing at which several residents of nearby neighborhoods voiced opposition to the tower. The district court ruled that the transcript of this hearing was not properly part of the written record before the City Council. Although U.S. Cellular discusses the hearing in its brief, it has not explicitly challenged the district court's exclusion of this transcript.

Falls residents opposed to the tower. Much of the Council's discussion focused on how the proposed tower, even at its reduced height of 62.8 feet, failed to meet the setback standards established in the new zoning ordinance. The Council ultimately voted 5-0 to revoke[3] the permit approved by the PZC. In an ordinance passed a few weeks after the meeting, the Council listed its reasons for revoking the permit: "violation[s]" of setback rules and concerns about the "safety and operations" of nearby Kickapoo Airpark. Wichita Falls, Tex., Ordinance No. 74-2001 (Aug. 7, 2001).[4]

U.S. Cellular promptly[5] filed suit in federal district court pursuant to 47 U.S.C. § 332(c)(7)(B)(v), which authorizes suit by

[3] In the ordinance overturning the PZC's approval of U.S. Cellular's permit, the Council declared that the permit had been "revoked." Wichita Falls, Tex., Ordinance No. 74-2001 (Aug. 7, 2001). We therefore use the terms "revoke" and "revocation" to describe the Council's action. However, in using the terms "revoke" and "revocation," we do not mean to imply that the Council's decision stripped U.S. Cellular of an established legal entitlement. Although the PZC can approve or deny permits, a PZC decision is subject to appeal to the City Council. Wichita Falls, Tex., Zoning Ordinance § 7245 (2001). Thus, although the Council called its decision a "revocation," review by the Council is more akin to an optional final step in the permit application process.

[4] The relevant section of the ordinance states that U.S. Cellular's permit was revoked because:

> 1. Proposal violates setback requirements for adjacent residential uses, as established in Section 5910 of the Zoning Ordinance;
> 2. Proposal violates setback requirements from property lines, as established in Section 5910 of the Zoning Ordinance;
> 3. Proposal violates setback requirements for single-family zoning district, as established in Section 5910 of the Zoning Ordinance;
> 4. Proposal may adversely impact the safety and operations of Kickapoo Airpark.

Wichita Falls, Tex., Ordinance No. 74-2001 (Aug. 7, 2001).

[5] Section 332(c)(7)(B)(v) requires suit within thirty days of the adverse action. The City Council revoked the permit on July 17, 2001, and issued the ordinance listing its reasons for revocation on August 7, 2001. U.S. Cellular filed its original complaint on August 14, 2001.

5

any person "adversely affected" by any "final action" inconsistent with the procedural or substantive protections of the Telecommunications Act. The complaint alleged (1) that the City Council's decision was not "in writing" as required by § 332(c)(7)(B)(iii); (2) that the City Council's decision was not "supported by substantial evidence contained in a written record" as required by § 332(c)(7)(B)(iii); and (3) that the City Council had "unreasonably discriminate[d]" against U.S. Cellular in violation of § 332(c)(7)(B)(i)(I). The suit sought an injunction ordering the City to approve U.S. Cellular's permit application. U.S. Cellular moved for summary judgment, but the district court, finding no genuine issue of material fact, instead granted summary judgment in favor of the City.[6] U.S. Cellular now appeals only one facet of the district court's ruling: that the revocation was supported by substantial evidence contained in a written record.

## II.

We review *de novo* a district court's ruling on a motion for summary judgment and use the same legal standard that the district court used. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002). Although other circuits have heard challenges brought under § 332(c)(7),[7] the construction and application of this provision is

[6] The City had not moved for summary judgment, but a district court may grant summary judgment against a movant even if the non-movant has not filed a cross-motion. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 730 (5th Cir. 2003); *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985).

[7] *E.g.*, *PrimeCo Pers. Communications, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147 (7th Cir. 2003); *USCOC of Va. RSA #3, Inc. v. Montgomery County Bd. of Supervisors*, 343 F.3d 262 (4th Cir. 2003); *U.S. Cellular Tel. of Greater Tulsa*

an issue of first impression in this Circuit.[8]

A.

The Telecommunications Act does not define the term "substantial evidence." *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1218 (11th Cir. 2002). However, "substantial evidence" is a legal term of art, so presumably Congress intended the term to carry the same meaning it carries in administrative law. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991). The Act's legislative history confirms this presumption; the conference report states that "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." H.R. Conf. Rep. No. 104-458, at 208 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 223.

Accordingly, "substantial evidence" is "such reasonable evidence that a reasonable mind would accept to support a conclusion." *Poly-America, Inc. v. NLRB*, 260 F.3d 465, 476 (5th Cir. 2001) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). A finding of substantial evidence requires "more than

---

*L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122 (10th Cir. 2003); *ATC Realty*, 303 F.3d at 94; *New Par v. City of Saginaw*, 301 F.3d 390 (6th Cir. 2002); *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1215 (11th Cir. 2002); *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 197 F.3d 64 (3d Cir. 1999); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490 (2d Cir. 1999).

[8] Two district courts in the Fifth Circuit have previously heard challenges based on the substantial evidence requirement. *Sprint Spectrum L.P. v. Parish of Plaquemines*, 2003 WL 193456 (E.D. La. Jan. 28, 2003) (unpublished) (upholding denial of building permit as supported by substantial evidence); *BellSouth Mobility, Inc. v. Parish of Plaquemines*, 40 F. Supp. 2d 372 (E.D. La. 1999) (same).

a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The reviewing court "must take into account contradictory evidence in the record" *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981). However, the reviewing court may not "re-weigh the evidence or substitute [its] judgment" for the judgment of the local government. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Substantial evidence review is therefore "highly deferential." *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 830 (7th Cir. 2003) (quoting *Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir.2002)). The plaintiff carries the burden of proving that no substantial evidence supports the local government's decision. *VoiceStream*, 342 F.3d 818, 830-31 & n.5; *Am. Tower LP v. City of Huntsville*, 295 F.3d 1203, 1207 (11th Cir. 2002); *S.W. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 63 (1st Cir. 2001).

In the context of the Telecommunications Act, the substantial evidence standard limits the types of reasons that a zoning authority may use to justify its decision. First, "generalized concerns" about aesthetics or property values do not constitute substantial evidence. *PrimeCo Pers. Communications, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1150 (7th Cir. 2003); *Preferred Sites*, 296 F.3d at 1219-1220; *Omnipoint Corp. v. Zoning Hearing*

8

*Bd.*, 181 F.3d 403, 409 (3d Cir. 1999).

Second, because the Telecommunications Act "is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements," *ATC Realty*, 303 F.3d at 94 (quoting *Omnipoint Communications MB Operations v. Lincoln*, 107 F. Supp. 2d 108, 115 (D. Mass. 2000)), courts have consistently required that the challenged decision accord with applicable local zoning law. *See, e.g.*, *id.*; *Am. Tower*, 295 F.3d at 1208; *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 197 F.3d 64, 72 (3d Cir. 1999); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 (2d Cir. 1999).

In sum, we must determine whether the City had some reasonable evidence, beyond mere generalized concerns, to support the reasons it gave for applying its zoning standards the way it did.

## B.

With this standard in mind, we turn to the reasons given by the City for revoking U.S. Cellular's permit. The first reason given by the City was that U.S. Cellular's tower plan failed to conform to the setbacks listed in section 5910(A) of the Wichita Falls Zoning Ordinance. That ordinance provides:

> A.   A communications tower should be setback from rights-of-way and adjacent properties equivalent to the height of the tower. Consideration toward reducing the setback may require specifications as to the engineered "fall" characteristics of a tower and the nature of neighboring land uses. The following may be

> considered minimum setback requirements:
> 1.  For ground-mounted proposals where the allowed zoning district is adjacent to a residentially-zoned district or residential use, such tower shall not be located closer than 300 feet from the residential use or residential zoning boundary . . . .

Wichita Falls, Tex., Zoning Ordinance § 5910(A) (2001).

Substantial evidence supports the City's conclusion that the proposed tower would not conform to these requirements. The written zoning report submitted to and considered by the Council showed that U.S. Cellular's proposal would have required the City to reduce nearly every guideline listed in the ordinance. The proposed tower would have stood less than 62.8 feet from three of four property lines, less than 300 feet from the nearest residential use, and less than 300 feet from the boundary of the nearest residential zone. Furthermore, some of the reductions sought by U.S. Cellular would have been considerable; the tower would have stood only 17.5 feet from one property line and only 25 feet from another. Thus, the evidence before the City Council showed that the proposed tower seriously failed to conform to the setbacks listed in section 5910(A).[9] This failure to conform to the setbacks listed in the ordinance constitutes substantial evidence sufficient to justify the City's revocation of U.S.

---

[9] The parties do not dispute that this evidence of nonconformity was part of a written record, namely, the PZC's written report. Therefore, we need not define the precise scope of "written record" under § 332(c)(7)(B)(iii) and decline to do so.

10

Cellular's permit.  *Cf. USCOC of Va. RSA #3, Inc. v. Montgomery County Bd. of Supervisors*, 343 F.3d 262, 271 (4th Cir. 2003) ("[T]he proposed tower's inconsistency with local zoning requirements is sufficient to establish substantial evidence for the denial of the permit.").

U.S. Cellular concedes that its tower proposal would not meet these setback guidelines but argues that section 5910(A) entitles it to a reduction in the setbacks.  According to U.S. Cellular, section 5910(A) establishes two relevant criteria that the City Council must consider when deciding whether to reduce the setbacks: (1) "the engineered 'fall' characteristics of the tower" and (2) "the nature of neighboring land uses."  U.S. Cellular claims the City failed to consider these criteria and argues that the Council treated the setback guidelines as mandatory rather than permissive. Because all the evidence on the two relevant criteria supported reducing the setbacks, U.S. Cellular argues, the City's reliance on the setback guidelines was not supported by substantial evidence.

U.S. Cellular has misread the ordinance.  Section 5910(A) is framed in permissive terms and does not require the Council to accord decisive weight to the two criteria identified as relevant by U.S. Cellular.  Section 5910(A) does not say that the Council *shall* or *must* consider fall characteristics and neighboring land uses, but that "[c]onsideration toward reducing the setback *may* require" information on those two criteria.  Wichita Falls, Tex.,

11

Zoning Ordinance § 5910(A) (2001) (emphasis added).  This phrase means that the Council may require a permit applicant to submit information on these two criteria, not that the Council is limited to considering these two criteria alone when deciding whether to allow a permit that does not conform to the setback guidelines.  Nothing in section 5910(A) bars the Council from considering other evidence, including the degree to which the proposal deviates from setback guidelines.  And nothing in section 5910(A) compels the Council to weigh evidence in favor of reducing setbacks in a particular manner.  Rather, the ordinance allows the Council discretion to decide whether it will grant reductions depending on the particular circumstances of each case.[10]

The Council's exercise of discretion was in accord with both the ordinance and the evidence before it.  The transcript of the Council meeting belies U.S. Cellular's assertion that the Council considered the guidelines set forth in section 5910 mandatory or acted as if those guidelines were mandatory.  Some council members expressed disappointment that the setbacks were not mandatory, probably because hard-and-fast rules would have made their decision

---

[10]   The permissive language of section 5910(A) stands in stark contrast to the mandatory language of the zoning ordinance at issue in *New Par v. City of Saginaw*, 301 F.3d 390 (6th Cir. 2002), a case on which U.S. Cellular heavily relies.  In *New Par*, a wireless provider successfully challenged a city's refusal to grant a permit as not in accord with the city's zoning ordinance.  In *New Par*, however, the zoning ordinance at issue explicitly directed the City of Saginaw to consider certain criteria in deciding whether to grant a variance.  *See New Par*, 301 F.3d 390 (quoting Saginaw, Mich., Zoning Code §§ 2712, 2714 (2002)).  In contrast, Wichita Falls' ordinance is permissive and does not require that the Council consider a list of factors or give those factors any particular weight in its ultimate decision.

easier.[11]  But the transcript of the Council meeting shows that members also explicitly recognized their discretion to grant a permit even if that permit would require departures from the setback guidelines.[12]

Nor did the Council disregard the evidence before it.  The transcript of the Council's meeting shows that the Council considered a number of factors and determined, based on the evidence, that U.S. Cellular's application did not present a convincing case for departure from the setback guidelines.[13]  Most important to the Council's determination was the degree of departure from those guidelines, especially given the fact that U.S. Cellular was the first applicant to seek a reduction in the setbacks.[14]  Even if all the evidence on fall characteristics and neighboring land uses had favored U.S. Cellular, the Council could--and did--determine that this evidence did not justify such a

---

[11]  For instance, Mayor Jerry Lueck stated: "I think the ordinance that was passed was just too vague.  I think we should have said it's going to be this way, or it's going to be that way."

[12]  For instance, Councilor Harold Hawkins stated that section 5910 gave the Council "latitude."  Councilor Johnny Burns stated that section 5910 gave the Council "flexibility."

[13]  Because section 5910(A) is permissive rather than mandatory, the Council need not have explicitly considered the tower's fall characteristics or neighboring land uses.  Even so, the record on appeal belies U.S. Cellular's contention that the Council utterly failed to consider fall characteristics and neighboring uses.  The PZC report and U.S. Cellular's own materials, both of which the Council had before it, described the tower's fall characteristics and the effect (or lack thereof) of the tower on neighboring land uses.  Nothing in the record indicates that the Council dismissed this evidence out of hand.  Rather, Councilor Johnny Burns noted that "even if the fall characteristics are 35 feet [as was evidently predicted], you're still going to fall on two adjacent properties."  The transcript also shows that the Council did discuss neighboring land uses, especially nearby neighborhoods.

[14]  Councilor Johnny Burns summarized the problem thus: "We wanted a little wiggle room.  To me, I don't know that . . . we're using wiggle room here.  To me, we're using dance floor room."

13

serious departure from the setback guidelines.[15]

U.S. Cellular seizes on a number of inexact statements by councilors and tower opponents. Many of the comments made at the Council meeting were not strictly germane to the issue before the Council, and the ordinance revoking the permit stated that the proposal "violates setback requirements" rather than stating more precisely that "the City Council chose not to grant a waiver of the general setback requirements." However, the council members and their constituents are not technocrats, and substantial evidence review does not require that the arguments and determinations be stated with exacting precision so long as the ultimate conclusion is undergirded by reasonable evidence.[16]

Ultimately, we need not determine whether the Council's decision was unwise. Under substantial evidence review, the City need not even demonstrate that a preponderance of the evidence

---

[15] The PZC's determination, on which U.S. Cellular heavily relies, is not controlling. Like the Council, the PZC weighed evidence in favor of reducing the setbacks against the policies embodied in the setbacks. That the PZC weighed the evidence differently is immaterial, as the Council has ultimate authority to weigh risks and to revoke zoning permits. *See* Wichita Falls, Tex., Zoning Ordinance § 7245 (2001).

[16] In making this point, we do not intend to take sides in a debate over how to characterize zoning authorities and how that characterization affects the definition of "substantial evidence." The Fourth Circuit, in recognition of the legislative nature of most local governments, interprets "substantial evidence" as requiring reasonable evidence that a reasonable legislator would accept to support a conclusion. *See USOC*, 343 F.3d at 271; *360/ Communications Co. v. Bd. of Supervisors*, 211 F.3d 79, 83 (4th Cir. 2000). In contrast, the Third and Seventh Circuits have emphasized the administrative role that local governments play and therefore treat zoning decisions just as they would treat decisions of federal administrative agencies. *See Omnipoint Corp.*, 181 F.3d at 408-09; *Aegerter v. City of Delafield, Wis.*, 174 F.3d 886, 889 (7th Cir. 1999). Because we believe that the Council had substantial evidence for its determination under either the "reasonable legislator" standard or the "reasonable administrator" standard, we need not decide between those alternatives.

14

supported its decision; rather, the City need only demonstrate that the Council had some reasonable evidence to support the conclusion that the proposal did not conform to setback requirements and that no reduction was warranted.  As a federal court, we may not "re-weigh the evidence."  *Boyd*, 239 F.3d at 704.[17]

## C.

The City also claims that it has substantial evidence for its conclusion that the proposed tower would threaten the safety and operations of Kickapoo Airpark.  The district court determined that the City lacked evidence for this conclusion.  We need not review the district court's decision on this point and decline to do so. If the City had substantial evidence for its other reasons, the fact that it lacked substantial evidence for its concerns about airport safety does not matter; the Telecommunications Act requires only that the adverse action be supported by substantial evidence, not that each individual reason for the adverse action be supported by substantial evidence.  *See* 47 U.S.C. § 332(c)(7)(B)(iii).

## III.

---

[17]  U.S. Cellular urges us to consider a possible national security interest in a robust wireless communications network.  U.S. Cellular should direct this argument to Congress, not to the federal courts.  Congress has chosen substantial evidence as the standard for reviewing local zoning decisions, and we must abide by that choice.

U.S. Cellular also complains that it has expended resources in preparing to use its chosen site.  But U.S. Cellular assumed the risk that its permit would be denied by choosing a plot of land so small that the City would have had to depart significantly from its setback guidelines to accommodate the tower. Regardless, as the Tenth Circuit has observed, the Telecommunications Act does not permit us to assess the equities of a given situation; under the requirements set by Congress, "so long as the municipality's decision is grounded in local law and supported by substantial evidence, 47 U.S.C. § 332(c)(7)(B)(iii) is satisfied."  *City of Broken Arrow*, 340 F.3d at 1136-37 (10th Cir. 2003).

15

The City's revocation of U.S. Cellular's permit was supported by substantial evidence in a written record.  We therefore AFFIRM the district court's grant of summary judgment to the City.