# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3049

_____

USCOC of Greater Iowa, Inc.,      *
                                            *

           Appellee,            *

                                           *    Appeal from the United States

       v.                             *    District Court for the

                                           *    Southern District of Iowa.

Zoning Board of Adjustment of the    *

City of Des Moines,                   *

                                             *

           Appellant.          *

_____

Submitted:  April 20, 2006
Filed:  October 11, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The Zoning Board of Adjustment of the City of Des Moines, Iowa (Board), appeals from the order of the District Court granting an injunction to USCOC of Greater Iowa, Inc., and directing the Board to grant USCOC's application for a conditional use permit to construct a monopole cellular tower at USCOC's preferred location.  We reverse and remand.

USCOC proposes to construct its tower on a leased forty-foot square parcel at the back (south end) of a parking lot adjacent to a hardware store at 4808 University Avenue in Des Moines.  The tower as proposed implicates zoning ordinances in the

Municipal Code of Des Moines in two respects. First, because the proposed tower would be eighty-five feet tall, it exceeds the height limits for as-of-right construction of communication towers and antennas in a residential district. See Des Moines, Iowa, Mun. Code § 134-342(12) (hereinafter Mun. Code).[1] It must therefore be situated on a lot of ten acres or more. Because the property in question (including the forty-foot square parcel to be leased to USCOC) is only about 1.3 acres, the Board must grant an **exception** before construction of the tower can be approved. See id. § 134-347(1). Second, the proposed tower is required to be "set back from the property line of any adjoining residentially zoned property a distance equal to the height of the tower and antenna, unless the tower is otherwise adequately screened from adjoining residential uses." Id. § 134-347(2). The forty-foot parcel abuts property to the south that is residentially zoned (the Waveland Village condominium parking lot). Because the eighty-five-foot tower, if constructed as proposed, in the center of the leased parcel, would be only twenty feet from the property line of the parking lot, and in the absence of proper screening, the Board would have to grant a **variance** before construction could go forward.[2] See id. § 134-64(2).

After a hearing on September 22, 2004, and another on October 27, 2004, the Board denied the requested conditional use permit for the proposed tower with a written Decision and Order. The Board found that USCOC had not shown it was entitled to an exception from the ten-acre requirement, that a variance from the setback requirement was needed because of inadequate screening, and that USCOC could not meet the requirements for a variance. USCOC brought an action in the District Court challenging the Board's decision. The District Court held a hearing and

---

[1]All citations in this opinion to the Des Moines, Iowa, Municipal Code are to the 2000 version.

[2]The property on which the three-story Waveland Village condominium building itself is situated, which adjoins the hardware-store lot to the west, is not zoned residential.

issued an order directing the Board to grant USCOC a permit for the proposed tower. The Board appeals. We review the District Court's decision de novo.

The Telecommunications Act of 1996 (TCA or Act), under which the jurisdiction of the federal courts is invoked in this case, was intended by Congress to foster competition among telecommunications providers, to improve the quality of their services, and to encourage the rollout of new technologies without delay. <u>City of Rancho Palos Verdes, Cal. v. Abrams</u>, 544 U.S. 113, 115 (2005). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." <u>Id.</u> But in the Act, Congress specifically preserved the authority of local zoning boards "over decisions regarding the placement, construction, and modification of personal wireless service facilities," subject to some limitations. 47 U.S.C. § 332(c)(7)(A).[3] Among those limitations is a requirement that a decision like the one at issue here, denying permission to construct a cellular tower, "be in writing and supported by substantial evidence contained in a written record." <u>Id.</u> § 332(c)(7)(B)(iii). The TCA gives courts jurisdiction to review such orders. <u>Id.</u> § 332(c)(7)(B)(v).

The Board's first issue on appeal concerns the nature of our review. In its order rejecting the Board's decision, the District Court wrote, "This is not a general appeal of the Board's decision. Rather, the question is whether the Board's decision was supported by substantial evidence." District Court Order of June 21, 2005, at 7–8. But the court then cited cases where district courts apparently determined that the "burden" was on the local zoning authorities to prove on review that their decisions were supported by substantial evidence. The Board maintains that the District Court erroneously "shifts on appeal the burden of proof to the government." Brief of Appellant at 16–17.

_____

[3]All citations in this opinion to U.S.C. are to the 2000 Code.

-3-

Notwithstanding the burden-shifting jargon found in the cases cited by the District Court, it is not altogether clear to us that the court actually put any burden of **proof** on the Board. Rather, the court's language suggests that, if anything, perhaps it placed a burden of **production** on the board. For example, the court found "that the Board failed to identify" or "point to 'substantial evidence' justifying its decision." District Court Order of June 21, 2005, at 13, 14. In any event, it seems to us that the burdens of production and persuasion are allocated (and met or not) well before either party sets foot in court. Congress did not give the courts authority to hear a zoning case anew or to take new evidence, but only to review the "written record" for "substantial evidence" supporting the decision of the local authority. 47 U.S.C. § 332(c)(7)(B)(iii). The only burden on the parties by the time they get to court is to be correct on the law and to argue the facts and the law persuasively; no additional "proof" is put on the record by either party. And to the extent that the true issue is whether the Board has the burden on review to show that its decision is supported by substantial evidence or USCOC has the burden of showing the decision is **not** supported by substantial evidence, we think the latter, traditional standard is the proper one.

The "procedural and judicial review scheme" of 47 U.S.C. § 332(c)(7)(B) "resembles that governing many federal agency decisions" and requires the exercise of "deferential consideration" by the reviewing courts. Abrams, 544 U.S. at 128 (Breyer, J., concurring). That is, we need only find "substantial evidence" supporting the decision in the record in order to affirm. The TCA contains no language in the section providing for court review of local zoning decisions that would indicate that Congress thought this traditional appellate standard for reviewing agency action would not apply; indeed, the Act invokes that very language. Cf. United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the [Freedom of Information Act] expressly places the burden 'on the agency to sustain its action' and directs the district

-4-

courts to 'determine the matter de novo.'" (quoting the Freedom of Information Act)). USCOC has not persuaded us that TCA-sanctioned court review of local zoning decisions regarding the construction of cellular towers compels anything other than the traditional "burdens" on appeal from federal agency action. We thus conclude that the burden is on the party seeking to overturn the Board's decision—in this case USCOC—to show that the decision is not supported by substantial evidence. In so holding, we find ourselves in agreement with a number of our sister circuits. See, e.g., United States Cellular Corp. v. City of Wichita Falls, Tex., 364 F.3d 250, 256 (5th Cir. 2004); Voicestream Minneapolis, Inc. v. St. Croix County, 342 F.3d 818, 830 (7th Cir. 2003); Am. Tower LP v. City of Huntsville, 295 F.3d 1203, 1207 (11th Cir. 2002); see also Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d 51, 63 (1st Cir. 2001); Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999); cf. United States Cellular Tel. v. City of Broken Arrow, Okla., 340 F.3d 1122, 1137 (10th Cir. 2003) ("To the extent U.S. Cellular suggests that it was the City's burden to come forward with evidence concerning the feasibility of co-locating on this site, we disagree." (citing local zoning ordinance as authority)). But even if we are mistaken about the legal burdens, we conclude that the Board's decision is nevertheless supported by the requisite substantial evidence.

As we suggested above, "substantial evidence" is a term of art in federal-court review of agency action, and we see no reason to deviate from the conventional application of the phrase in this case. We agree with the Seventh Circuit that although "it is unusual for a federal court to be reviewing the decision of a nonfederal agency, we are given no reason to suppose that the term 'substantial evidence' in the Telecommunications Act bears a different meaning from the usual one." Primeco Pers. Communications v. City of Mequon, 352 F.3d 1147, 1148 (7th Cir. 2003). Noting that "substantial evidence" review was historically employed in appeals from jury verdicts, this Court has recognized that significant deference to the fact-finder is required. Menendez-Donis v. Ashcroft, 360 F.3d 915, 918 (8th Cir. 2004). "[U]nder the substantial evidence standard we cannot substitute our determination for that of

the administrative fact-finder just because we believe that the fact-finder is clearly wrong." Id. If the Board's findings are "supported by some substantial level of evidence" (but less than a preponderance) on the record as a whole ("[c]ontrary evidence may not simply be ignored on review") so that a reasonable fact-finder could reach the same conclusion as did the Board, the Board's decision must be affirmed. Id. at 919. We will not reject the Board's decision as unsupported by substantial evidence because there exists "the possibility of drawing two inconsistent conclusions from the evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

We cannot agree with USCOC's assertion that "Federal law has largely displaced traditional local zoning law" where cellular towers are concerned. Brief of Appellee at 18. The TCA contains no substantive law or guidance on granting or denying permits for cellular towers and does nothing to erode the power of local authorities to enforce traditional zoning concerns. The Act specifically reserves to local zoning boards authority "over decisions regarding the placement, construction, and modification" of cellular towers, so long as such decisions do not discriminate among providers and do not effectively prohibit "the provision of personal wireless services"—and so long as the decision is in writing and supported by substantial evidence. 47 U.S.C. § 332(c)(7)(A) & (B).[4] And Congress's omission from the TCA of substantive standards for cellular-tower siting further demonstrates that Congress intended, notwithstanding the high degree of federal regulation in the area of wireless communication, to allow local zoning boards to continue to do what local zoning boards traditionally do best: make reasoned decisions regarding the appropriate use of privately-owned property for the public good. That is, "the TCA does not federalize telecommunications land use law." Todd, 244 F.3d at 57.

_____

[4]A further limitation prohibits state or local governments from "regulat[ing] the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

We turn then to the Board's findings that resulted in the denial of the conditional use permit: USCOC needed both an **exception** and a **variance** from the zoning regulations and did not prove it was entitled to either. Although the evidence to justify the denial of both the exception and the variance overlaps in this case, the two are distinct in the vernacular of zoning regulations.

We first consider the denial of the **exception** from the requirement that the tower be on a ten-acre lot.[5] The Board specifically pointed to the proposed tower's proximity (twenty feet) to the residentially-zoned parking lot owned and used by the Waveland Village condominiums. The 1.3-acre size of the lot where USCOC proposes to locate the tower and the lot's other present uses (a hardware store and the store's parking lot) dictate that the tower be situated at the back of the lot, near the property line, which hardly allows for the tower to be a greater distance from the adjacent lot. Witnesses at the hearings expressed concerns about ice forming on the tower and the antenna arrays and then falling onto cars and persons below in the condominium parking lot. In fact, it is undisputed that USCOC's equipment building to be constructed at the base of the tower was to be hardened to protect it from falling

---

[5]USCOC contends that an Iowa state court "vacated" the City's ten-acre requirement as "unlawfully vague" and "hint[ed]" that the requirement violated the TCA. Brief of Appellee at 21, 22, 24. In affirming that state-court decision, the Iowa Supreme Court did not address the lower court's holding regarding the lawfulness of the ten-acre requirement. See United States Cellular Corp. v. Bd. of Adjustment, 589 N.W.2d 712 (Iowa 1999). USCOC argues that this demonstrates the Iowa high court's de facto affirmance of the lower court on that issue and insists that Des Moines, by enforcing the ten-acre exception requirement, has been "openly defying judicial decisions against it." Brief of Appellee at 24. It is not our job under the TCA in this case to decide if the City is violating Iowa state law, and we note that the District Court likewise did not address this argument in its opinion. In the case before us, we are only considering whether the Board's denial of a conditional use permit to USCOC to build the cellular tower in question is supported by substantial evidence in the record. We also reject USCOC's vagueness argument, which is based on the same state-court decision.

ice (or other objects). Also, as the Board noted and the evidence showed, the tower would be very close to the condominiums themselves, and many of the condominium dwellers would have an unobstructed view of the tower because there is no existing or proposed screening between the condominium building and the eighty-five-foot tower. This evidence led the Board to conclude that USCOC had presented insufficient evidence to show that siting the tower on the forty-foot square parcel at the back of the 1.3-acre lot would "adequately safeguard the health, safety and welfare of the occupants of adjoining and surrounding property," as required for an exception. Mun. Code § 134-64(4). Further, the Board found that the danger of falling ice and the lack of screening would diminish property values in the area of the tower, another zoning factor that prevents the Board from granting the requested exception. See id. (exceptions "shall not diminish or impair established property values in surrounding areas"). On these facts, the Board determined that the exception should be denied.

USCOC argues that this decision is not supported by substantial evidence, challenging the expertise of the witnesses and those witnesses' reliance largely on mere speculation for their safety, aesthetic, and property-value concerns. Our review convinces us, however, that the evidence upon which the Board relies in its decision in this case meets the deferential "substantial evidence" test without the necessity of additional expert testimony. It is common sense that ice will form on cellular towers, at least on the antenna arrays on monopoles, in Des Moines, Iowa, during some winter months, and that this ice will on occasion fall onto the property below. The evidence that some of the condominium owners may have wanted to lease the condominium association's own property to USCOC for the tower does not make other owners' concerns about falling ice any less legitimate. USCOC impliedly acknowledged as much when it proposed that its equipment building, to be located at the base of the tower, be a hardened structure. Further, as USCOC has conceded, cellular towers are not ordinarily considered aesthetically pleasing. And in this case, the condominium owners' objections are not nebulous aesthetic concerns. The undisputed testimony was that the tower would be in the sight line of anyone looking out the condominiums'

-8-

east-side windows. Having an unobstructed view of a tower from one's home every day would diminish most property owners' enjoyment of their property. And common sense again dictates that having such a tower in the sight line from and so close to one's home reduces the value of that home, especially when the property owner is not the one receiving the income from the lease. We also think it is significant that USCOC, with the considerable resources at its disposal, did not counter the intuitive lay opinion or anecdotal evidence from those opposing the tower with contrary evidence relating to the concerns about the placement of this tower at this site.

The Board's decision that USCOC was required to get a variance for which it did not qualify is also supported by substantial evidence and provides an additional ground for denying the conditional use permit. As we have explained, a **variance** from the eighty-five-foot setback to a twenty-foot setback is not required if "the tower is otherwise adequately screened from adjoining residential uses." Id. § 134-347(2). The parking lot to the south of the leased parcel, from which the tower would be set back only twenty feet (from the property line), is zoned residential and is used by the condominium residents for parking—it has a present residential use. It is not screened from the tower. USCOC contends that we must reject the finding that a variance is required for the proposed tower because the Board's decision "never specifically addressed screening as it related to the property to the south." Brief of Appellee at 47. But regardless of whether the Board made this specific finding, there is substantial evidence in the record that a variance was required. We are not precluded from citing record evidence in our review of the Board's decision merely because the Board failed to mention that evidence in its order. The TCA requires only that the Board's final decision be in writing and supported by substantial evidence **in a written record**, not that every necessary finding be in the written decision.

To get the requested variance, USCOC was required to show that the failure to allow a twenty-foot setback instead of an eighty-five-foot setback would "result in unnecessary hardship." Mun. Code § 134-64(2). The Board found that USCOC had

not shown any of the necessary elements of such hardship, when the ordinance required that it show all three:

–that the property owner "has been deprived of all beneficial or productive use of the land in question," id. § 134-347(2)(a);

–that "[t]he plight of the owner is due to unique circumstances not of the owner's own making," id. § 134-347(2)(b); and

–that the proposed use "will not alter the essential character of the locality of the land in question," id. § 134-347(2)(c).

The owner of the hardware store and adjoining parking lot where the proposed tower would be located does not lose all beneficial use of his land if the tower is not constructed. The use of his land can remain exactly the same as it is without the tower. The only "beneficial use" he loses if the tower is not constructed is the agreed-to rent payments from USCOC. But the "beneficial use" element will not be proved only by showing "that a variance would permit the owner to maintain a more profitable use." Id. § 134-347(2)(a). He must show the loss of "all" beneficial use, and he cannot do that. We also reject any notion that hardship is proven because USCOC, as lessor, can make no beneficial use of its leased forty-foot square parcel if it cannot put a cellular tower on it. As for the second element, USCOC has identified no "unique circumstances" in the owner's inability to lease a forty-foot square parcel of his land for construction of a cellular tower; the property at 4808 University Avenue is simply not large enough to accommodate the required setback. And finally, while the question whether the tower would "alter the essential character of the locality of the land" may be open to debate, given the present mixed-use zoning in the area, USCOC must show all three elements to be entitled to a variance. The Board's determination that USCOC cannot do so is supported by substantial evidence.

USCOC argues, notwithstanding our conclusions on the "substantial evidence" issues, that the Board's decision effectively prohibits the provision of personal wireless services, 47 U.S.C. § 332(c)(7)(B)(i)(II), and therefore must be enjoined.

This question of law was not addressed by the District Court, but considering the question de novo in any event, we do not agree with USCOC's position. In denying USCOC a conditional use permit to build its proposed cellular tower, the Board noted that the proposed site already is "surrounded by [USCOC's] existing communication facilities." Zoning Bd. of Adjustment, City of Des Moines, Iowa, Decision and Order at 4 (Findings ¶ 7). By locating its proposed tower at 4808 University Avenue, USCOC seeks to improve the dropped-call rate along University Avenue and to improve service inside buildings. USCOC is presently able to provide service within the area in question, just not the quality of service it would like. We will assume only for this opinion the dubious proposition that a zoning board's refusal to grant a permit for a cellular tower, with the result that a single provider's wireless service in a relatively small area is less than optimal, may be a "prohibition" on the provision of personal wireless services for purposes of the TCA. Even with that being the case, the record shows that USCOC did not adequately investigate all feasible alternative sites, pursuing only one other site with any vigor. The Board's preference, it seems, was for USCOC to collocate on a cellular tower already in place on a golf course in City-owned Waveland Park, but because of a dispute between the owner of the tower and the City, the City was not prepared to allow any additional collocation on that tower at the time.[6] USCOC did not want to wait for the dispute to be resolved. We agree that it seems somewhat harsh for the City to deny USCOC collocation on the existing tower when USCOC cannot, under the terms of the City's zoning ordinances, build its own tower in its preferred location. But there were other locations that USCOC rejected without ever giving them serious consideration, so we are unable to conclude

_____

[6]Towers can be built to provide multiple antenna arrays and therefore support multiple wireless service providers. USCOC's proposed tower in this case, for example, proposed to provide up to three antenna arrays. American Tower owns the monopole in Waveland Park and leases the land from the City. Apparently, American Tower allowed Sprint to collocate on the tower without advising the City—and without paying any additional rent—causing the city to suspend collocation on that tower.

-11-

that the hardware store parking lot was the only location for a cellular tower that would remedy USCOC's coverage issue. We conclude that on this record, USCOC cannot show that the Board's denial of the requested conditional use permit results in the prohibition of the provision of personal wireless services.

Having reviewed the written record for substantial evidence supporting the Board's decision, we conclude that a reasonable fact-finder could have determined, as did the Board, that the permit should be denied on either of two grounds: (1) USCOC could not show it qualified for an exception, and (2) construction of the tower as proposed required a variance, and USCOC was unable to show that it was entitled to one. Further, because denial of the permit does not result in the prohibition of the provision of personal wireless services, it does not otherwise violate the TCA. Accordingly, we remand to the District Court with instructions to vacate its order directing the Board to grant USCOC's application for a conditional use permit.

_____