# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1965

_____

| | |
|---|---|
| Sprint Spectrum, L.P., doing business as Sprint PCS, | * <br> * <br> * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Western District of Missouri. |
| Platte County, Missouri, | * |
| | * |
| Appellee. | * |

_____

Submitted: January 15, 2009
Filed: August 6, 2009

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sprint Spectrum, L.P. ("Sprint"), sued Platte County, Missouri, alleging that the County's Planning and Zoning Commission ("Commission") violated the Telecommunications Act of 1996 ("TCA") by denying Sprint's application for a special use permit to construct a telecommunications tower. Sprint argued that the Commission's decision was neither "in writing" nor "supported by substantial evidence contained in a written record," as required by the TCA. 47 U.S.C.

§ 332(c)(7)(B)(iii). The district court[1] granted summary judgment in favor of Platte County, and Sprint appeals. We conclude that the Commission's denial of the permit application was "in writing" and "supported by substantial evidence," and we therefore affirm.

I.

Sprint is licensed by the Federal Communications Commission to provide wireless telecommunications services to certain geographic markets, including Platte County. To improve wireless cellular phone coverage in the area, Sprint sought to build a telecommunications tower on a 7.47-acre parcel of property owned by a local church. The property is zoned as an agricultural district, but is adjacent to several residential subdivisions. The Platte County Zoning Order of 1990 ("Zoning Order") permits the construction of telecommunications towers in agricultural districts, but only if applicants first obtain a special use permit from the Commission.

In June 2005, Sprint submitted its first application for a special use permit to the Commission. It proposed to construct a 150-foot monopole tower on the church property. The Platte County Planning and Zoning Department ("Department"), which is responsible for issuing recommendations to the Commission, reviewed the application and decided not to support it. In a letter to Sprint, the Department stated that it had considered several factors listed in the Zoning Order, including the proximity of the tower to residential areas, the design of the tower, and surrounding tree coverage, and concluded that Sprint had not adequately addressed how to reduce or eliminate the visual obtrusiveness of the tower. The Commission held a public hearing on the matter, during which the Department stressed that the tower would visually dominate an area that was largely residential, and that the City of Platte City,

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

a neighboring jurisdiction, opposed the proposal. At the close of the hearing, the Commission unanimously denied the permit.

In March 2006, Sprint filed a revised special use permit application, this time proposing a 153-foot stealth tower disguised as a flagpole. The Department again reviewed the application, and again decided not to support it. In a second letter to Sprint, the Department stated that while it appreciated Sprint's effort to propose a flagpole instead of a monopole design, the problems identified with respect to the first proposal were not resolved by the amended application. The Department also prepared a "Staff Report," which contained a more detailed explanation of its reasons. The report stated that the proposal failed to advance several of the Zoning Order's goals for telecommunication towers, including locating towers in non-residential areas and minimizing their aesthetic impact. This was so, the report explained, because the tower would "visually dominate an otherwise residential area," and because a more substantial buffer than the one offered was needed to reduce the adverse aesthetic effect of the tower. The report also stated that the "proposed telecommunications tower would substantially injure the value of the neighboring properties as well as compromise the residential setting in the area." Finally, the report stated that the Platte County R-III School District opposed the permit request.

The Commission held a hearing to consider Sprint's amended application. The Commission had before it an administrative record that contained, among other documents, the Department's letter and Staff Report, letters from Platte City and the school district opposing the tower, five letters from property owners opposing Sprint's application, and Sprint's application materials. Sprint's application included a site plan of the proposed tower, maps of the area, and simulated photographs and drawings of the tower.

At the hearing, Jason Halterman, a member of the Department, stated that the scale and location of the tower had not changed from the first proposal, and that the

tower would depress property values and continue to have an adverse aesthetic impact on the area. Halterman also explained that Platte City and the school district opposed the permit. Sprint's representative testified, stating that the flagpole design was intended to accommodate the previous aesthetic objections to the monopole design, and that Sprint had no other option but to place the tower in the proposed location. In addition, Sprint's representative urged that telecommunications towers need to be relatively close to people to provide adequate cellular coverage, and that towers in residential areas do not affect property values.

The Commission voted unanimously to deny Sprint's revised application for a special use permit, recording its decision in a four-page document entitled "Findings of Fact, Conclusions of Law and Special Use Permit." The Commission's written decision set forth several reasons for denial of the application, including conclusions that the tower would have a negative effect on property values and would "dominate the immediate neighborhood so as to prevent development and use of neighboring property."

In May 2006, Sprint brought an action against Platte County in the district court, asserting, among other claims, that the Commission's denial of its application for a special use permit was neither "in writing" nor supported by "substantial evidence," as required by the TCA. Sprint moved for summary judgment on that ground, requesting that the district court issue an injunction directing Platte County to grant Sprint's application for a special use permit. Platte County opposed Sprint's motion, urging that substantial evidence in the administrative record supported the Commission's decision to deny the permit based on the tower's adverse aesthetic impact and negative effect on property values.

The district court denied Sprint's motion and *sua sponte* granted summary judgment in favor of Platte County. The court concluded that the Commission's decision satisfied the "in writing" requirement and was supported by "substantial

evidence" based on aesthetic concerns alone. The court concluded that Platte County's claim that the proposed tower would reduce property values was not supported by the record. Following the court's judgment, Sprint voluntarily dismissed the remaining counts in its complaint with prejudice, thus creating a final, appealable judgment. *See Great Rivers Co-op of Se. Iowa v. Farmland Indus., Inc.*, 198 F.3d 685, 688 (8th Cir. 1999).

## II.

Sprint argues that the district court erred in granting summary judgment in favor of Platte County. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Level 3 Commc'ns, L.L.C. v. City of St. Louis*, 477 F.3d 528, 553 (8th Cir. 2007). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The TCA "was intended by Congress to foster competition among telecommunications providers, to improve the quality of their services, and to encourage the rollout of new technologies without delay." *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment*, 465 F.3d 817, 820 (8th Cir. 2006). To achieve these goals, the TCA reduces the "'impediments imposed by local governments upon the installation of facilities for wireless communications,'" including telecommunication towers. *Id.* (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)). At the same time, the TCA preserves the authority of local zoning boards "'over decisions regarding the placement, construction, and modification of personal wireless service facilities,'" subject to certain substantive and procedural limitations. *Id.* (quoting 47 U.S.C. § 332(c)(7)(A)). One such limitation, codified at 47 U.S.C. § 332(c)(7)(B)(iii), requires that a local board's denial of a permit to construct a telecommunications tower "be in writing and supported by substantial evidence contained in a written record."

The Commission provided four reasons for its decision, set forth in paragraphs lettered A through D:

A. The proposed Special Use does not comply with all applicable provisions of the Platte County Zoning Order of 1990, including use regulations, height and area regulations, parking regulations and building requirements.

B. The proposed Special Use at the location described herein will adversely affect the welfare or convenience of the public.

C. The proposed Special Use will cause substantial injury to the value of the property in the neighborhood in which it is to be located.

D. The location and size of the Special Use, the nature and intensity of the operation involved in or conducted in connection with it, and the location of the site with respect to the streets giving access to it are such that the Special Use will dominate the immediate neighborhood so as to prevent development and use of neighboring property in accordance with the applicable zoning district regulations. In making this determination, consideration has been given to the location, nature and height of the buildings, structures, walls and fences on the site and the nature and extent of landscaping and screening on the site.

Sprint argues that the Commission's decision to deny its application for a permit does not satisfy the "in writing" requirement and is not "supported by substantial evidence contained in a written record."

This court has not addressed what satisfies the "in writing" requirement of the TCA. Most of the circuits to address the question have concluded that a "written denial must contain a sufficient explanation of the reasons for the permit denial," although it need not set forth "formal findings of fact and conclusions of law." *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 59-60 (1st Cir. 2001); *see MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 722 (9th Cir. 2005); *New Par v.*

*City of Saginaw*, 301 F.3d 390, 395-96 (6th Cir. 2002). On this view, decisions by local boards "must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." *New Par*, 301 F.3d at 395-96. These courts conclude that something more than a bare written statement of denial is necessary, because the judicial review contemplated by the TCA is frustrated if a reviewing court has no means to ascertain the rationale behind the decision of a local zoning board. *See MetroPCS*, 400 F.3d at 722; *Todd*, 244 F.3d at 60.

The Fourth Circuit, by contrast, held that the stamping of the word "denied" on a zoning application, without any statement of reasons for the decision, satisfies the "in writing" requirement of § 332(c)(7)(B)(iii). *AT&T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 429 (4th Cir. 1998). The court reasoned that "Congress knows how to demand findings and explanations" in statutes, as evidenced by its choice of language in other sections of the TCA itself, and yet it declined to do so in subsection (B)(iii). *Id.* at 429-30. Thus, a requirement of anything more than the stamping of the word "denied" would have the effect of "importing additional language into the statute." *Id.* at 429.

The district court followed the majority view. The parties agree on appeal that this was the right approach, and we will assume, without deciding, that they are correct. In applying this standard for "in writing," the parties further agree that the Commission's decision is "separate from the written record" and "describe[s] the reasons for the denial." *New Par*, 301 F.3d at 395. They dispute, however, whether the Commission's explanation provided "a sufficient explanation of the reasons for the denial" to permit a reviewing court to examine the record for evidence substantiating those reasons. *Id.* Sprint argues that while Platte County now defends the decision based on concerns about "aesthetics," the Commission's decision never used that term. Sprint also complains that the decision does not explain how the tower

will "prevent development and use of neighboring property," or cite any specific facts from Sprint's application to support its conclusion.

We conclude that paragraph D of the Commission's decision provides sufficient detail to satisfy the "in writing" requirement under the TCA. Under the standard for "in writing" embraced by the parties and three circuits, a local zoning board need only provide an explanation that is sufficient to permit meaningful judicial review of whether the record contains substantial evidence to support the board's decision. Congress undoubtedly recognized that local boards are "primarily staffed by laypeople," and that "it is not realistic to expect highly detailed findings of fact and conclusions of law." *Todd*, 244 F.3d at 59.

Viewed in this light, paragraph D of the Commission's decision is adequate to the task. It explains that the Commission objected to the proposed tower because its size, location, and relationship to surrounding screening and landscaping were such that the tower would "dominate the immediate neighborhood so as to prevent development and use of neighboring property." Although the Commission did not use the term "aesthetics," the decision plainly refers to matters that relate to the aesthetic impact of the project – namely, the tower's height and location, its tendency to "dominate" the neighborhood, and the extent of landscaping and screening around it. The decision provides sufficient reasoning to permit a meaningful review of whether the administrative record contains substantial evidence to support the Commission's conclusion.[2]

_____

[2]Sprint complains that paragraph D merely recites section 400.760(D)(4) of the Zoning Order, but nothing in the statutory "in writing" requirement precludes a zoning board from citing a local zoning code's provisions as the reason for a denial. The denial was literally in writing, and accepting the position of the parties that the written denial must furnish a statement of reasons to facilitate judicial review, an incorporation of the Zoning Order in this case provides adequate guidance concerning the Commission's rationale.

We also conclude that the Commission's denial of the application based on the reasons stated in paragraph D is "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In making this determination, we follow the traditional standard used for judicial review of agency determinations:

> Under the substantial evidence standard we cannot substitute our determination for that of the administrative fact-finder just because we believe that the fact-finder is clearly wrong. If the Board's findings are supported by some substantial level of evidence (but less than a preponderance) on the record as a whole (contrary evidence may not simply be ignored on review) so that a reasonable fact-finder could reach the same conclusion as did the Board, the Board's decision must be affirmed. We will not reject the Board's decision as unsupported by substantial evidence because there exists the possibility of drawing two inconsistent conclusions from the evidence.

*USCOC*, 465 F.3d at 821 (internal quotations, brackets, and citations omitted).

The TCA's "substantial evidence" requirement is "directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 830 (7th Cir. 2003) (internal quotation and brackets omitted). Here, the Zoning Order expressly directs the Commission to consider aesthetics in deciding whether to permit the construction of towers. Section 400.440(E)(3), which governs the factors to be weighed in reviewing tower applications, requires consideration of aesthetics, including the "height of the proposed tower," the "[p]roximity of the tower to residential structures," the "[s]urrounding topography . . . tree coverage, and foliage," and the "design of the tower, with particular attention paid to design characteristics that have the effect of reducing or eliminating visual obtrusiveness." Section 400.440(C) sets forth a host of general guidelines for the location of towers, many of which are related to aesthetics. These guidelines call for the placement of towers in non-residential areas and the construction of towers in ways that "minimize the

-9-

adverse visual impact upon onlookers." Section 400.440(C)(13) provides the most specific aesthetics requirements in the Zoning Order, including standards on proper illumination, landscaping, and screening in order to "blend the tower . . . into the natural setting." These provisions vest considerable discretion in the Commission to deny permits based on aesthetics.

Accordingly, aesthetic concerns can be a valid basis on which to deny Sprint's permit, so long as the aesthetic judgment is "grounded in the specifics of the case" and not based on "generalized aesthetic concerns . . . that are applicable to any tower, regardless of location." *Todd*, 244 F.3d at 61. Sprint argues that the Commission's decision is unsupported, because Sprint complied with the aesthetics requirements of the Zoning Order, and the decision was based on generalized aesthetic concerns. The record shows, however, that the Commission's decision was buttressed by evidence regarding the specific location in which Sprint proposed to erect the tower. The Department conducted a visit of the proposed site, and concluded that the property – although zoned agricultural – was surrounded by residential neighborhoods, including the Broken Bridge and the Coons Valley View subdivisions. At the zoning meeting, a member of the Department testified about the tower's proximity to nearby residences. He displayed an aerial map indicating the surrounding homes, and stated that a 153-foot tower at the proposed site would "visually dominate an otherwise residential area." The Staff Report reiterated these concerns, noting that a tower of that magnitude would disrupt the residential setting in the area. Three owners of nearby homes sent letters to the Commission, in which they cited the residential character of the specific location and the negative visual impact that a tower would have on it. The record also contains simulated pictures of the proposed tower, indicating that the proposed site includes some trees and foliage, but nothing that would come close to minimizing the visual impact of a 153-foot tower.

Keeping in mind that the substantial evidence standard is "essentially deferential," *MetroPCS*, 400 F.3d at 725 (internal quotation omitted), we conclude

that the Commission had before it substantial evidence on the record as a whole that the tower's scale, its proximity to residences, and the surrounding environment made approval inappropriate in view of the considerations outlined in the Zoning Order. A reasonable mind could find adequate evidence in the record grounded in the specifics of the case to support the Commission's legitimate concerns about aesthetics.

\*     \*     \*

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

I do not believe paragraph D of the Commission's decision "contain[s] a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59 (1st Cir. 2001). As a consequence, I disagree with the conclusion that the Commission's decision satisfies the Telecommunication Act's "in writing" requirement. I also disagree the Commission's decision was supported by substantial evidence. I therefore respectfully dissent.

Paragraph D of the Commission's decision contained several potential reasons for denying the permit, including (1) the location and size of the tower, (2) the nature and intensity of the operation conducted in connection with the tower, and (3) the location of the tower with respect to the streets giving access to it would be such that the tower would dominate the immediate neighborhood so as to prevent development and use of neighboring properties. Notably, paragraph D simply mirrored the first four of seven general standards listed in the Platte County Code for granting or denying special use permits. See App. A123.

Because the Commission's decision is not specific as to which of the general standards the tower transgressed, a reviewing court is left to speculate as to the real reason or reasons for the Commission's decision. We cannot determine why, for example, the Commission believed Sprint's tower would "prevent development and use of neighboring property in accordance with the applicable zoning district regulations." The record contains evidence that some neighboring property owners objected to the tower due to perceived negative health affects the tower would create. If this were the reason the Commission determined the tower would prevent development of neighboring property, it would be an impermissible basis upon which to deny the permit. See 47 U.S.C. § 332(c)(7)(B)(iv) ("No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."). When the record contains impermissible grounds for a zoning decision, and the explanation given for the decision is not specific enough to determine whether the decision was based on those grounds or permissible ones, I do not believe a reviewing court can determine whether the decision complies with the Telecommunications Act.

I also do not agree the Commission's decision was supported by substantial evidence. The district court based its grant of summary judgment on Platte County's *post hoc* argument that aesthetic concerns about the tower supported the Commission's decision. As Sprint notes, however, none of the four reasons given by the Commission for denying the permit specifically refer to aesthetic concerns about the tower as the reason for denying the special use permit. Moreover, the Platte County Code had a section specifically labeled "Aesthetics" setting forth the aesthetic requirements for towers, see App. A117-18, and Sprint complied with those requirements; therefore, the Commission could not base its denial on aesthetic

concerns.[3]  See State ex rel. Union Elec. Co. v. Univ. City, 449 S.W.2d 894, 901 (Mo. Ct. App. 1970) (indicating the action of a governing board is illegal when it is not based upon the guidelines set forth under an ordinance meant to guide administrative discretion).  A local zoning authority does not have discretion to deny a permit to construct a cellular tower if the proposal meets the relevant standards within the zoning regulations.  SBA Commc'ns, Inc. v. Zoning Comm'n of the Town of Brookfield, 112 F. Supp. 2d 233, 239-40 (D. Conn. 2000).  Thus, aesthetic concerns cannot be the basis for denying Sprint's application, and the other evidence in the record is insufficient to support the Commission's decision.

I respectfully dissent.

_____

---

[3]If the Commission's decision were truly based on aesthetic concerns, it seems unusual it would rely upon the general statement in paragraph D about "development and use of neighboring property," rather than indicate how the tower violated the provision of the zoning code specifically addressing aesthetics.